UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Benjamin Schwarz, Christina Schwarz,
And Daniel Schwarz,

                Plaintiff,

           Index No: 09-CV-9346 (PAE)

   against

ThinkStrategy Capital Management, LLC and
Chetan Kapur,

                Defendant.
-------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW

Respectfully Submitted,

Drohan Lee LLP

489 Fifth Avenue
New York, New York 10017
(212) 710-0004


//Vivian R. Drohan//
By: Vivian R. Drohan

*Attorneys for Defendants*

# TABLE OF CONTENTS

ISSUES PRESENTED..................................................................................................................1

ARGUMENT ...............................................................................................................................1

   A.  PLAINTIFFS' ALLEGED RELIANCE ON EITHER PRIOR WRITTEN STATEMENTS OR LATER-MADE ORAL STATEMENTS CANNOT BE MAINTAINED, AND CANNOT PROVIDE A BASIS FOR A FRAUD CLAIM. ...........................................................................1

     1.    The Language of the ThinkStrategy Offering Memorandum and Subscription Agreement Preclude Plaintiffs' Reliance on Any Contradictory Pre-Investment Marketing Material or Oral Representations Prior To Investment. ...............................................................................................1

     2.  Plaintiffs Could Not Reasonably Rely On the Alleged Misrepresentation To The Extent That They Were Merely Forward Looking Statements, Predictions Or Opinions Which Cannot Be Actionable. .....................................................................................................................................6

   B.    PLAINTIFFS FAILED TO DEMONSTRATE CAUSATION BETWEEN THE POST-INVESTMENT MISREPRESENTATIONS ALLEGEDLY MADE BY DEFENDANT AND THE PLAINTIFFS' LOSSES ........................................................................................................7

     1.    Plaintiffs' Holder Claim Cannot Be Maintained As No Causal Relationship Exists Between The Alleged Post-Investment Misrepresentations And The Plaintiffs' Failure To Make Redemption Requests. ....................................................................................................................7

     2.  Plaintiffs Failed To Prove Loss Causation..............................................................................8

   C.    SHOULD LIABILITY BE IMPOSED AGAINST DEFENDANTS, RECISSION IS STILL NOT THE APPROPRIATE REMEDY. .........................................................................9

CONCLUSION..........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994) ..................................................... 2

Bango v. Naughton, 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (N.Y.App.Div.1992) .................... 3

Channel Master Corp. v. Aluminium Ltd. Sales, Inc., 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958) ...................................................................................................................... 2

Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959) .......... 2

Druck Corp. v. The Macro Fund Ltd., 290 Fed. Appx. 441, 445 (2d. Cir. 2008) ........................ 10

Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc., 195 F.Supp.2d 551, 561 (S.D.N.Y. 2002) ........................................................................................................................... 2

ESBE Holdings, Inc., Vanquish Acquisition Partners, LLC, 50 A.D.3d 397, 398, 858 N.Y.S.2d 94, 95 (1st Dep't 2008) ................................................................................................................. 7

Harsco Corp. v. Segui, 91 F.3d 337, 342 (2d Cir.1996) ................................................................ 2

Iowa Public Employees' Retirement System v. MF Global, Ltd. 620 F.3d 137, 141 (2nd Cir. 2010) ............................................................................................................................................ 7

Kaye v. Fast Food Operators, Inc., 99 F.R.D. 161, Fed. Sec. L. Rep. P 99,645, S.D.N.Y., September 16, 1983 (NO. 82 CIV 4296) ................................................................................... 12

KSW Mech. Serv., Inc. v. Willis of New York, Inc. 63 A.D.3d 411, 412, 879 N.Y.S.2d 328 (1st Dept't 2009) ................................................................................................................................. 5

Longo v. Butler Equities II, L.P., 278 A.D.2d 97, 97, 718 N.Y.S.2d 30, 30 (1st Dep't 2000) ....... 5

M.H. Segan Ltd. Partnership v. Hasbro, Inc., 924 F.Supp. 512, 527 (S.D.N.Y.1996) ................... 3

Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 317–18 (2d Cir.1993) ........................ 3

New Shoes S.A. v. Don King Productions, 2000 U.S. App Lexis 6319 (2nd Cir. 2000) .............. 11

O'Hearn v. Bodyonics, Ltd., 22 F.Supp.2d 7, 13 (E.D.N.Y.1998) ................................................. 2

Pacnet Network Ltd. v. KDDI Corp. 2010 N.Y. Slip OP 8353, 912 N.Y.S.2d 178, 180 (1st Dep't Nov. 16, 2010) ............................................................................................................................. 5

Rudman v. Cowles Communications, Inc., 30 N.Y.2d 1, 13-14 (1972) ....................................... 11

San Diego County Employees Ret. Assoc. v. Maounis, 2010 U.S. Dist. Lexis 25501, 40 (S.D.N.Y.2010) ............................................................................................................................ 5

South Cherry Street, LLC v. Hennessee Group, LLC, 573 F.3d 98 (2nd Cire. 2009) .................. 12

The Continental Ins. Co.v. Mercadante, 222 A.D. 181, 225 N.Y.S. 488 (1st Dep't 1927) ............. 9

The Starr Foundation v. Am. Int'l Group, Inc., 2019 NY Slip Op 4526, 76 A.D.3d 25, 901 N.Y.S.2d 246 (1st Dep't 2010) .................................................................................................. 9

Merkin v. Gabriel Capital LP, 817 F. Supp2d 346 (2011) ........................................................... 12

Water Street Leasehold LLC v. Deloitee & Touche LLP, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598, 599 (1st Dep't 2005) .................................................................................................. 10

Yang v. Morgan Stanley Dean Witter, 282 A.D.2d 271, 724 N.Y.S.2d 149, 150 (1st Dep't 2001) 5

## ISSUES PRESENTED

1. Whether a merger or integration clause precludes reliance on either prior oral and/or written statements or later-made oral statements.

2. Whether the remedy of recession is appropriate.

## ARGUMENT

**A.  PLAINTIFFS' ALLEGED RELIANCE ON EITHER PRIOR WRITTEN STATEMENTS OR LATER-MADE ORAL STATEMENTS CANNOT BE MAINTAINED, AND CANNOT PROVIDE A BASIS FOR A FRAUD CLAIM.**

1.  **The Language of the ThinkStrategy Offering Memorandum and Subscription Agreement Preclude Plaintiffs' Reliance on Any Contradictory Pre-Investment Marketing Material or Oral Representations Prior To Investment.**

Contrary to Plaintiffs' arguments, the presence of merger or integration provisions and a myriad of disclaimers, as well as numerous cautionary language throughout the Offering Memorandum precludes the Plaintiffs' alleged reliance with respect to all of their claims, including fraud, negligent misrepresentation, and breach of fiduciary duty. It is well established in New York that reasonable reliance is a necessary element for establishing both a fraud claim and negligent misrepresentation claim. *Harsco Corp. v. Segui*, 91 F.3d 337, 342 (2d Cir.1996) (*citing, inter alia, Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir.1994) and *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)). Thus, in order to succeed on these claims, Plaintiff must show reasonable reliance. Where a party specifically disclaims reliance upon a particular representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." Harsco, 91

F.3d at 345 (*citing Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959)); *accord Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir.1993). *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.*, 195 F.Supp.2d 551(S.D.N.Y. 2002).

To apply such a holding in the present context, the clauses "must contain an adequately specific, as opposed to general, disclaimer." *Emergent Capital*, supra. In order for clauses to be considered adequately specific, such clauses "must contain specific disclaimers of the particular representations . . . ." Emergent Capital at 561, citing *Yanakas,* 7 F.3d at 316; *O'Hearn v. Bodyonics, Ltd.,* 22 F.Supp.2d 7, 13 (E.D.N.Y.1998) ("A specific disclaimer typically consists of a clause stipulating that the parties are not 'relying' upon specified, extra-contractual representations."). "Even in the absence of a specific disclaimer, a fraudulent inducement claim will be barred whenever "an express provision in a written contract contradicts the claimed oral representations in a meaningful fashion." *Bango v. Naughton,* 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (N.Y.App.Div.1992); *accord Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 317–18 (2d Cir.1993); " .

Although a general merger clause does not bar an action for fraud, when a signatory explicitly disclaims reliance on the subject of the allegedly fraudulent statement, or when the contract states that the defendant makes no representations other than those contained in another more exhaustive clause of the contract, a fraud claim may be precluded. *Harsco,* 91 F.3d at 345–47; *Yanakas,* 7 F.3d at 317. Therefore, "in order to determine whether [Plaintiffs] can claim to have reasonably relied on the alleged misrepresentations, it is necessary to determine if the merger clause is specific or general." Id. at 562. In Emergent Capital the court held that although a general merger clause alone cannot by itself preclude reasonable reliance as a matter

2

of law, plaintiff's reasonable reliance claim cannot be maintained if and when the agreement at issue also contains other specific disclaimers. For example, the Court in Emergent Capital pointed out the following disclaimer:

> No representation or warranty by the Company in this Agreement, in any schedule to this Agreement, or in the Ancillary Agreements, contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make the statements contained herein or therein not false or misleading. There is no fact or circumstance relating specifically to the current business operations or condition of the Company that could reasonably be expected to result in a Material Adverse Effect that is not disclosed in a Schedule attached hereto. Id. at 562

Thus, the court in Emergent Capital essentially took into account a merger clause in conjunction with numerous other disclaimers as well as plaintiff's representation and warranties when determining whether extrinsic evidence should be precluded. Here, Defendant's Offering Memorandum, together with Subscription Agreement and Limited Partnership Agreement, have similar or equivalent clauses as that found in the Emergent Capital case. For example, the Offering Memorandum contains the clause:

> NO PERSON HAS BEEN AUTHORIZED IN CONNECTION WITH THIS OFFERING TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS *OTHER THAN AS CONTAINED IN THIS MEMORANDUM*. (emphasis added)

The plain meaning of this clause is clear and unambiguous: the Offering Memorandum comprises an exclusive communication of all authorized information and representations relevant to the offering. The Court has raised a question concerning the counter impact by the following language appearing in a paragraph ahead:

> Each prospective subscriber will be given the opportunity to ask questions and receive answers from the General Partner *concerning the terms and conditions* of the offering and to obtain any reasonably available additional documentary information (including copies of all material contracts and agreements *referred to herein*) necessary *to verify the accuracy of the information set forth*. Prospective subscribers and their professional advisers are invited to request any further information they may desire from the general partner, ThinkStrategy

3

Capital Management LLC.  (*emphasis* added)

This paragraph clearly means that, prior to making an investment, each prospective investor can ask questions and receive answers to the extent that such requested information relates to the accuracy of the terms and conditions contained in the Offering Memorandum.  To construe this paragraph in any other way would place it in contradiction of the clear language immediately following it and would act to defeat the logical purpose of a prospectus-i.e. an integrated exclusive set of written representations upon which the investor is invited to rely.

In addition, the Subscription Agreement executed by the Plaintiffs includes numerous representations, warranties and agreements that support this position.  For instance, the following paragraph is found in the beginning of the Subscription Agreement:

> The undersigned subscriber . . . hereby irrevocably subscribes for . . . units of limited partnership interest . . . ***in accordance with the terms of the Partnership's private offering memorandum dated January 1, 2003, including all exhibits thereto***, as the same may be amended and supplemented from time to time . . .
>
> The Subscriber has ***received, carefully read and understands*** the [Offering] Memorandum particularly . . . the risks and conflicts of interest applicable to this investment described under the captions "RISK FACTORS" and "CONFLICTS OF INTEREST" in the [Offering] Memorandum, and the Limited Partnership Agreement attached to the [Offering] Memorandum as EXHIBIT A.  (***emphases*** added)

Thus, by its very terms the contract of subscription is entirely conditioned upon and subject to a single integrated writing:  the Offering Memorandum.  Consequently, any assertion that Plaintiffs reasonably relied upon extrinsic evidence outside of the terms and conditions of the Offering Memorandum is absurd.  The integration clause, collectively with numerous other disclaimers and representations contained in the Offering Memorandum, the terms and conditions of Limited Partnership Agreement and Subscription Agreement which Plaintiffs agreed and consented to, should preclude any reliance Plaintiff asserts for common law fraud and/or negligent misrepresentation.  Any representations made in response to such information

4

requests by Plaintiffs is entirely qualified by and subject to the disclosures made in the Offering Memorandum.

Defendants argue that Plaintiffs should not be allowed to assert that they reasonably relied on the pre-investment materials provided by Defendants in making their investment decisions. Numerous New York cases establish that where the contract language contradicts Plaintiffs' assertion that it relied on oral representations, Plaintiffs' reliance is not presumed to be true. *Pacnet Network Ltd. v. KDDI Corp.* 2010 N.Y. Slip OP 8353, 912 N.Y.S.2d 178, 180 (1st Dep't Nov. 16, 2010); *KSW Mech. Serv., Inc. v. Willis of New York, Inc.* 63 A.D.3d 411, 412, 879 N.Y.S.2d 328 (1st Dept't 2009) (dismissing fraud claim when insurance manual's disclaimers flatly contradicted a plaintiff's claim of reasonable reliance); *Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 97, 718 N.Y.S.2d 30, 30 (1st Dep't 2000) (dismissing fraud claim where documentary evidence contradicted the plaintiff's assertion that it relied on representations). Furthermore, where, as here, the offering documents specifically disclosed the various risks involved in an investment in the fund, such disclosures "rendered any reliance on alleged contradictory oral representations unjustifiable as a matter of law." *Yang v. Morgan Stanley Dean Witter,* 282 A.D.2d 271, 724 N.Y.S.2d 149, 150 (1st Dep't 2001). See also *San Diego County Employees Ret. Assoc. v. Maounis*, 2010 U.S. Dist. Lexis 25501, 40 (S.D.N.Y.2010) (sophisticated investor's purported reliance on oral statements prior to executing subscription agreements was unreasonable as a matter of law when PPM and subscription agreement clearly stated that the investor relied solely on the PPM in making its investment).

**2. Plaintiffs Could Not Reasonably Rely On the Alleged Misrepresentation To The Extent That They Were Merely Forward Looking Statements, Predictions Or Opinions Which Cannot Be Actionable.**

To plead a claim of fraud or negligent misrepresentation, a plaintiff must allege that the defendant made "an intentional misrepresentation of any material existing fact." *Pacnet Network Ltd. v. KDDI Corp.* 2010 N.Y. Slip OP 8353, 912 N.Y.S.2d 178, 180 (1st Dep't Nov. 16, 2010). "A forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *Iowa Public Employees' Retirement System v. MF Global, Ltd.*, 620 F.3d 137, 141 (2nd Cir. 2010). Examples of such forward-looking statements include optimistic statements concerning future performance or "puffery," opinions, predictions or expectations, including predicted investment performance and planned investment strategy, cannot sustain a claim for fraud. See, e.g., *ESBE Holdings, Inc., Vanquish Acquisition Partners, LLC,* 50 A.D.3d 397, 398, 858 N.Y.S.2d 94, 95 (1st Dep't 2008) (dismissing fraud claim based on statements of projected investment returns); *Naturopathic Labs. Int'l, Inc. v. SSL Ams., Inc.,* 18 A.D.3d 404, 795 N.Y.S.2d 580, 581 (1st Dep't 2005) (statements that funding "would be no problem," that defendants "envision[ed]" securing funding in a certain way and stated their intent were non-actionable statements of opinion and prediction); *Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 718 N.Y.S.2d 30, 32 (1st Dep't 2000) (statement that the target company was seriously undervalued and could be profitably broken up was one of opinion and puffing); *Zaref v. Berk & Michaels, P.C.,* 192 A.D.2d 346, 595 N.Y.S.2d 772 (1st Dep't 1993) (representations that an investment would be profitable were non-actionable "speculation and expressions of hope for the future"). Predictions of a future event by a party with no present knowledge of whether that event may or may not

occur are not actionable. See *Albert Apartment Corp. v. Corbo Co.*, 182 A.D.2d 500, 582 N.Y.S.2d 409, 410 (1st Dep't 1992).

The complained of statements contained in the PowerPoint marketing pitch book are classic examples of such forward looking statements, expectation, prediction and opinion, and cannot support a claim of fraud and/or misrepresentation. The alleged PowerPoint statements all relate to expected future conduct, and as such they are promissory or predictive rather than factual in nature. Plaintiffs do not put forth a single example of an alleged misstatement from the fund's private placement memorandum or subscription agreement on which they can claim to have relied to their detriment.

Therefore, the Plaintiffs' claims with respect to fraud and misrepresentation cannot be maintained.

B. **PLAINTIFFS FAILED TO DEMONSTRATE CAUSATION BETWEEN THE POST-INVESTMENT MISREPRESENTATIONS ALLEGEDLY MADE BY DEFENDANT AND THE PLAINTIFFS' LOSSES**

   1. **Plaintiffs' Holder Claim Cannot Be Maintained As No Causal Relationship Exists Between The Alleged Post-Investment Misrepresentations And The Plaintiffs' Failure To Make Redemption Requests.**

Plaintiffs asserted that they would have made immediate redemption requests had there been no misrepresentation by Defendants with respect to the Defendants' investment into a certain sub-fund. Accordingly, the Court requested us to respond to the issue of whether an immediate redemption request would have been made if no alleged post-investment misrepresentations were made, or alternately, if the alleged truth were disclosed regarding defendants' investment in sub-funds. The gist of this issue, in essence, pertains to a common law holder claim.

To sustain a holder claim in New York, a plaintiff must establish that it did not do (i)

7

what it had intended to do, (ii) what it had started to do, and (3) what it would have done but for the fraud. *Continental Ins. Co.v. Mercadante*, 222 A.D. 181, 225 N.Y.S. 488 (1st Dep't 1927). New York courts view this type of holder claim as inherently speculative, and will scrutinize plaintiff's allegations of reliance and loss causation. See, e.g., *The Starr Foundation v. Am. Int'l Group, Inc.*, 2019 NY Slip Op 4526, 76 A.D.3d 25, 901 N.Y.S.2d 246 (1st Dep't 2010) (affirming dismissal of holder claim for failure to sufficiently allege loss causation); *Lee v. Marsh & McLennan Cos., Inc.*, 2007 NY Slip Op 52325U, 7, 17 Misc. 3d 1138A, 856 N.Y.S. 2d 24 (Sup. Ct. Nassau County Dec. 7, 2007) (dismissing holder claim for failure to adequately allege reliance).

Consistent with Plaintiffs' testimony, it is clear that Plaintiffs were in fact satisfied with the Defendant fund performance up until 2008 when the global credit crisis and general market crash occurred. Accordingly, it is reasonably inferred that Plaintiffs were in fact confident with the Defendant fund's investment procedure, and therefore it is unclear whether the alleged truthful disclosure would indeed have resulted in the hypothetical redemption requests. As such, the Plaintiffs' assertion that "had it been a truthful representation, we would have redeemed immediately" is merely hindsight. Thus, Plaintiffs failed to assert a sufficient causal relationship between the alleged false or fraudulent statements and their decisions to hold their investment, because their decisions to hold their investment were motivated by then successful performance by Defendant, not by sound disclosure or the investment process itself. Therefore, the holder claim cannot be sustained.

  2. **<u>Plaintiffs Failed To Prove Loss Causation</u>**

Plaintiffs also did not sufficiently show that the alleged misstatements actually caused the ultimate losses in their investment – a requirement applied to all of the Plaintiffs' claims.

"[P]laintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentation directly caused the loss about which plaintiff complains (loss causation)." *Water Street Leasehold LLC v. Dolomite & Touche LLP*, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598, 599 (1st Dep't 2005) (fraud and misrepresentation claims properly dismissed where plaintiff failed to allege that the misrepresentations, as opposed to market forces, caused the losses). See also, *Druck Corp. v. The Macro Fund Ltd.*, 290 Fed. Appx. 441, 445 (2d. Cir. 2008) ("while [plaintiff] alleged that but for the representations in the side letter, it would not have made its investment, [such assertion] failed to allege that these representations proximately caused the value of its shares to decline."); *Edison Fund v. Cogent Invest. Strategies Fund*, 551 F. Supp. 2d 201, 229-30 (S.D.N.Y. 2008) (allegation that plaintiffs would not have invested had they known the true facts failed to allege loss causation; the subject of the fraudulent statement did not cause the loss).

Here, Plaintiffs could not and did not sufficiently prove that the alleged misrepresentations caused the losses suffered by Plaintiffs as the losses were not the result of Defendants' misrepresentation, but rather the result of certain sub-funds' fraud schemes which has not been shown to have been readily available or obtainable by *then* commonly utilized due diligence process which Defendants used, combined with the subsequent market crashes. Therefore, Plaintiffs failed to show causation.

C. **SHOULD LIABILITY BE IMPOSED AGAINST DEFENDANTS, RECISSION IS STILL NOT THE APPROPRIATE REMEDY.**

Rescission is an equitable remedy, which "is to be invoked only when there is lacking [a] complete and adequate remedy at law and where the status quo may be substantially restored.... [Where] damages appear adequate and it is impracticable to restore the status quo," rescission is

inappropriate. *New Shoes S.A. v. Don King Productions,* 2000 U.S. App Lexis 6319 (2nd Cir. 2000), citing *Rudman v. Cowles Communications, Inc.,* 30 N.Y.2d 1, 13-14 (1972). Rescission is an inappropriate remedy in this matter as, contrary to Plaintiff's arguments, the plaintiffs' status quo cannot be substantially restored. Plaintiffs' invested in TS MultiStrategy Fund LP not ThinkStrategy Capital Management. The contractual relationship the Plaintiffs have is not with ThinkStrategy or Chetan Kapur, but with a Fund that is currently in liquidation. Rescinding their investment would be detrimental, preferential, and unfair to the remaining investors all of whom suffered pro rata from the fraud of those certain sub-funds, and considering the position of the Fund, it could never place the Plaintiffs in their original position.

Defendants agree with the proposition that to order rescission in cases of fraud is within the discretion of the Court and acknowledge that in *Gordon v. Burr*, 506 F.2d 1080 (2nd Cir. 1974), the Court held that privity was not necessarily required to impose the remedy of rescission. However, in this case, it is argued that rescission remains an improper remedy for several reasons. Unlike Gordon, this case does not involve allegations of securities violations 10(b) or any specific security violation. See also, *Kaye v. Fast Food Operators, Inc*., 99 F.R.D. 161, Fed. Sec. L. Rep. P 99,645, S.D.N.Y., September 16, 1983 (NO. 82 CIV 4296).

Unlike securities violations which the Court held occurred in Gordon, the fraud and negligent misrepresentation alleged in this matter does not rise to the level of fraud required for rescission. As the Court in *Merkin v. Gabriel Capital LP*, 817 F. Supp2d 346 (2011) noted, citing *South Cherry Street, LLC v. Hennessee Group, LLC*, 573 F.3d 98 (2nd Cir. 2009), "an investment advisor who recommends investments in a fund that turns out to be a Ponzi scheme will not ordinarily be held liable for *securities fraud* [emphasis added] unless the investor alleges particular facts giving rise to a strong inference that the advisor either had fraudulent intent, or

acted with conscious recklessness as to the truth or falsity of the advisors statements to the investor. " Merkin at 357.

## CONCLUSION

For the foregoing reasons, it is respectfully requested by Defendants that the Court find:

I. The merger or integration clauses, together with the numerous disclaimers and representations contained in Fund documentation, preclude the Plaintiffs' reliance on the extrinsic evidence including marketing material and parol representations;

II. Causation cannot be established between Defendants' alleged misrepresentation and Plaintiffs' loss; and

III. Recession is not the appropriate remedy should the Court find Defendants liable.

Dated: New York, New York
April 9, 2012

Respectfully submitted,

Vivian R. Drohan, Esq.
DROHAN LEE LLP
*Attorneys for Defendants*
489 Fifth Avenue
New York, New York 10017
(212) 710-0004

*M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996)