UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                        :

BENJAMIN SCHWARZ; CHRISTINA SCHWARZ;     :
and DANIEL SCHWARZ,                        :              09 Civ. 9346 (PAE)
                                          :

                        Plaintiffs,     :         OPINION & ORDER
                                          :

                  -v-                      :
                                          :

THINKSTRATEGY CAPITAL MANAGEMENT LLC;  :
CHETAN KAPUR,                         :
                                          :

                      Defendants.     :
                                          :

----------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

This decision resolves a claim by plaintiffs that an asset that should have been available

to them to collect on a judgment was fraudulently transferred to a third party.

## I.    Background

Plaintiffs Benjamin, Christina, and Daniel Schwarz were investors in the ThinkStrategy

MultiStrategy Fund LP, a leveraged "fund of funds" run by ThinkStrategy Capital Management

LLC ("ThinkStrategy") and its managing director, Chetan Kapur ("Kapur").  In this diversity

action, plaintiffs brought New York state law claims of fraud, negligent misrepresentation, and

breach of fiduciary duty against defendants ThinkStrategy and Kapur.  On May 31, 2012, after a

bench trial, the Court found for plaintiffs on all three claims and ordered defendants to pay

damages, ultimately calculated at about $4.8 million.  Dkt. 118, 132.  That judgment has not

been paid.  Dkt. 151 ¶ 3.

Presently pending is a motion by which plaintiffs seek to obtain a portion of the money

owed them.  On November 21, 2013, plaintiffs filed a motion and supporting documents seeking

to compel non-party Bina Rai ("Rai") to turn over to the Sheriff of New York County for sale a Porsche 911 automobile in partial satisfaction of the judgment in this action.  Plaintiffs claimed that in 2010, before the judgment here, Kapur fraudulently conveyed the Porsche to Rai, so as to avoid paying a potential judgment against him.  Dkt. 149–51.  On January 29, 2014, after the Court received oppositions from Rai and Kapur and a reply from plaintiffs pursuant to a briefing schedule it had set, *see* Dkt. 152, the Court determined that resolution of the motion required the Court to make factual determinations.  Accordingly, the Court scheduled an evidentiary hearing, at which Kapur and Rai were to testify.  Dkt. 160.

The hearing was originally scheduled for February 25, 2014.  *Id.*  On February 5, 2014, Kapur's lawyer moved to withdraw.  Dkt. 161.  That day, the Court granted his motion and, to give Kapur time to obtain new counsel, rescheduled the hearing for April 1, 2014.  Dkt. 162.  Two days later, plaintiffs moved for an order compelling Kapur to testify about a separate topic: "a $2.1 million wire transfer he made to a Swiss bank in 2007."  Dkt. 164.  After the Court issued an order allowing plaintiffs to depose Kapur, Dkt. 165, plaintiffs clarified that they wished to examine Kapur on this issue at the evidentiary hearing.  Dkt. 168.  On February 18, 2014, the Court granted that request.

On March 11, 2014, at Rai's request, the Court put off the hearing until April 25, 2014, Dkt. 176; it was later rescheduled for April 30, 2014, Dkt. 179.  On April 14, 2014, the Court received letters from Rai and Kapur.  Rai, *pro se*, represented that she had earlier sold the Porsche; she asked that the hearing be cancelled as moot.  Kapur joined in the request and noted that he had previously been asked about the Swiss wire transfer during his deposition.  Dkt. 181.  The Court denied these requests, because (1) as to Rai's point, the sale of the Porsche would not moot plaintiffs' motion, but instead would merely convert plaintiffs' motion into one seeking the

proceeds of the sale if in fact the Porsche had been fraudulently conveyed to her; and (2) as to

Kapur's claim that he recalled nothing further about the Swiss wire transfer, the hearing would

test that proposition. *Id.*

Neither Kapur nor Rai appeared on April 30, 2014, *see* Dkt. 186; nor did they appear at

the rescheduled hearing on May 12, 2014, *see* 5/12/14 minute entry; Dkt. 199.  Later that day,

plaintiffs moved for a restraining order on Rai's assets, up to the amount for which the Porsche

had been sold.  Dkt. 194.  On June 9, 2014, the Court denied that motion, on the grounds that

plaintiffs had not made out a prima facie showing that the Porsche had been fraudulently

conveyed to Rai.  Dkt. 198.  The Court rescheduled the hearing for June 24, 2014, at 4 p.m., and

directed plaintiffs to personally serve Kapur and Rai, both of whom are *pro se*.  Plaintiffs'

previous service on them had been by mail and by leaving service packages at their buildings,

leaving uncertain whether each had, in fact, obtained notice of the hearing dates.

On June 23, 2014, plaintiffs successfully served Kapur, in person, at the offices of the

U.S. Probation Department, at which he had a scheduled meeting arising out of his 2013

conviction, pursuant to a guilty plea, for failing to preserve books and records of an investment,

in violation of 15 U.S.C. §§ 80b-4 & 80b-17, *see United States v. Chetan Kapur*, No. S1 12 Cr.

535 (JFK) (S.D.N.Y.); Dkt. 203; Dkt. 207 ("Tr.") at 7.

On June 24, 2014, Kapur appeared at the hearing, again appearing *pro se*.  He testified,

and was cross-examined, about his transfer of the Porsche to Rai in 2010; Kapur testified that the

transfer was made to partially repay Rai for a $70,000 loan she had made to him on November

29, 2000.  Kapur also testified about a $2.1 million wire transfer that he had made to a Swiss

bank in 2007.  The Court also received documents bearing on these two subjects.  The hearing

resumed on July 9, 2014, and Kapur completed his testimony.  Because Rai had yet to be

personally served, the Court that day directed Kapur to advise Rai that the Court was awaiting

her testimony, and scheduled that testimony for Monday, July 14, 2014.  That day, Rai appeared,

*pro se*, and testified on the subject of the Porsche.  Consistent with Kapur's testimony, Rai

testified that she had loaned Kapur $70,000, with interest, in 2000, and that Kapur's transfer in

2010 to her of the Porsche was in partial repayment of that loan.  Rai testified that she later sold

the Porsche for $48,000.

Following the close of testimony, the Court invited plaintiffs, Kapur, and Rai to submit

post-hearing letters, with their views as to what the evidence had shown.  Each party submitted

such a letter.  *See* Dkt. 214 (plaintiffs' letter); Dkt. 217 (Kapur's letter); Dkt. 213 (Rai's letter).

## II.     Discussion

The Court is presented with a single factual issue:  Was there a loan, by Rai to Kapur, in

2000, that remained unpaid as of 2010?  Kapur and Rai so testified.  And they identified a

written agreement, dated November 29, 2000 and signed by both of them, as proof of this.

Plaintiffs' Exhibit ("PX") 1A.  The loan agreement describes a $70,000 loan by Rai to Kapur that

day, due November 29, 2010, with interest to accrue at 2% per year, payable at maturity.  If there

was indeed such a loan, then, as plaintiffs concede, Kapur's transfer to Rai in 2010 of the

Porsche, which discharged part of his debt to her, was supported by fair consideration and was

not a fraudulent conveyance.  On the other hand, if Kapur did not owe an antecedent debt to Rai,

then his transfer of the Porsche to her in the face of pending claims by plaintiffs is voidable as a

fraudulent transfer.

The Court has carefully considered the parties' respective arguments and the competing

inferences from the evidence presented.  The Court also closely examined Kapur and Rai as they

testified and attempted to gauge their credibility.

On the one hand, the Court is unprepared to put any weight whatsoever on Kapur's testimony.  Kapur is a convicted felon and a demonstrated liar.  Before the bench trial in this case, Kapur caused his then-attorney to submit to the Court, unwittingly, false information and documentation, to the effect that that Kapur was ill, in India, and unable to travel to the United States.  The evident purpose of this submission was to defer the scheduled trial; in the end, the trial proceeded with the Court's receiving Kapur's deposition testimony in lieu of live testimony.  Only later, long after the Court resolved the case, was it determined, when Kapur was intercepted at a United States airport attempting to leave the country, that Kapur's claims of absence and ill health were fabricated.  And Kapur's testimony at the hearing in this case did not inspire any confidence.  He was at many points evasive and incredible; and he was visibly uncomfortable answering questions truthfully and directly.  The Court found Kapur's testimony about a subject unrelated to Rai particularly impossible to believe.  Specifically, Kapur testified that he did not recall and could not explain multi-million dollar transfers of money from the management account of his business to an apparent bank account in Switzerland.  Tr. 32–54.  The Court discredits this testimony.  Were the claim of a preexisting debt to Rai solely based on Kapur's say-so, the Court would have no difficulty discrediting that claim.

However, as to the Porsche episode, there is additional evidence that must be considered. In particular, Rai testified, under oath, that the loan agreement was authentic.  She testified that she did indeed lend Kapur $70,000 in 2000, and set out the circumstances under which this loan was made.  She also testified that PX 1A is the written loan agreement memorializing that loan. It is dated November 29, 2000, recites the terms of the loan, and bears her signature.  She also testified that she signed a document entitled a "partial loan acceptance repayment," dated October 12, 2010, by which she accepted title and ownership of the Porsche, with an estimated

"Blue Book" value of $54,450, to be applied towards the $70,000 loan. That document bears Rai's signature as well as Kapur's. *See* PX 1B.

For the Court to grant plaintiffs' application here, the Court would be obliged to find that Rai (1) fabricated the series of events involving her loan to Kapur; (2) falsely testified under oath before this Court as to these events; and (3) was party (with Kapur) to creating two separate false and misleading documents (PXs 1A and 1B) that purport to substantiate her account. The Court has carefully considered plaintiffs' arguments why the evidence, and the inferences therefrom, support discrediting Rai. *See generally* Dkt. 214. Plaintiffs make substantial arguments along these lines. The Court has also considered the competing inferences that would support Rai's credibility on these points. The ultimate question—whether the documents and the story of a loan were fabricated—is a close one.

In the end, the Court, having carefully observed and considered Rai during her testimony, and having given close thought since to her credibility, is not prepared to find that she thus lied. The Court therefore finds, narrowly, that: (1) Kapur did owe Rai $70,000 (plus interest) pursuant to the 2000 loan agreement; (2) this money remained owed at the time of Kapur's 2010 transfer of the Porsche to Rai; (3) this transfer was supported by adequate consideration in that it reduced Kapur's outstanding debt to Rai; and (4) the transfer was therefore not fraudulent.

Accordingly, plaintiffs' motion for turnover of the Porsche (or the proceeds of its sale by Rai) is denied.

To the extent plaintiffs develop evidence as to other assets of Kapur or of co-defendant ThinkStrategy, including but not limited to assets held in overseas accounts such as those implicated by the testimony plaintiffs elicited from Kapur, plaintiffs are at liberty to move for

appropriate relief with respect to those assets. The Court stands ready to consider any and all

proper requests that would assist plaintiffs to collect on their judgment.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel Rai to turn over the Porsche or the

proceeds of its sale is denied. The Clerk of Court is respectfully directed to terminate the motion

pending at docket number 149.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: July 28, 2014
      New York, New York