```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BENJAMIN SCHWARZ,
CHRISTINA SCHWARZ
and DANIEL SCHWARZ,                         Civil Action No: 09 CV 9346 (PAE)

Plaintiffs,
                                            PLAINTIFFS' POST-HEARING
-against-                                   MEMORANDUM

THINKSTRATEGY CAPITAL
MANAGEMENT LLC and CHETAN KAPUR,

Defendants.
------------------------------------------------------------------x
```

Plaintiffs Benjamin Schwarz, Christina Schwarz and Daniel Schwarz ("the Schwarz Plaintiffs") respectfully submit this post-hearing memorandum in connection with the contempt hearing conducted in this matter and in *Securities Exchange Commission v. Kap*ur, 11-cv-8094 (PAE) ("the SEC matter") on May 20-21, 2015.

## PRELIMINARY STATEMENT

The Schwarz Plaintiffs sought an order from this Court seeking contempt sanctions against Defendant Chetan Kapur ("Kapur") in connection with Kapur's failure to provide truthful and complete testimony concerning a 2007 $2.1 million transfer to Bank Sarasin and the existence of any other Swiss bank accounts owned or controlled by Kapur.[1]

---

[1] As the Schwarz Plaintiffs have previously explained, they are not seeking a contempt sanction in connection with Kapur's failure to pay any of the approximate $4.8 million judgment owed them by Kapur in light of the clear authority that contempt sanctions are not available to compel the payment of a judgment absent exceptional circumstances. *See N.Y. City Dist. Council of Carpenters Pension Fund v. G&M Drywall Sys.* 2010 U.S. Dist. LEXIS 54444,*49 (S.D.N.Y. June 1, 2010); *Cordius Trust v. Kummerfeld*, 2009

Based on the evidence introduced at the hearing, it is clear that Kapur has not provided truthful and complete testimony about these matters and should be held in contempt.

## STATEMENT OF FACTS

The following evidence was introduced at the hearing.

On June 24, 2014, Kapur testified at a hearing before the Court.[2] Kapur understood that he was required to provide truthful testimony about a 2007 $2.1 million wire transfer from ThinkStrategy Capital Management LLC to an account in the name of CCO Ltd at Bank Sarasin in 2007.[3] At the hearing, which took place on June 24, 2014, Chetan Kapur testified that he had no recollection of purpose of the wire transfer, did not know what CCO Ltd was, did not form CCO Ltd., and that he had never set up a bank account at a Swiss bank other than possibly as part of providing managed account services for clients.

At the hearing, documents were introduced that proved the falsity of Kapur's testimony concerning the Bank Sarasin transfer and his denial of establishing Swiss bank accounts.

Specifically, the Court received documents containing a September 2008 email exchange between Kapur and Phillip Stibolt, a senior vice-president at Bank Sarasin.[4] In

---

U.S. Dist. LEXIS 98889, at *20 n.8 (S.D.N.Y. Oct. 23, 2009) (quoting *Aetna Cas. & Surety Co. v. Markarian*, 114 F.3d 346, 349 n.4 (1st Cir. 1997)).

[2] The transcript of the June 24, 2014 hearing was introduced at the hearing as Exhibit Sch. 1.
[3] Tr. at 93.
[4] The September 2008 email exchange was introduced as SEC Ex. 3.
[5] Id.
[6] Tr. at 93.
[7] The September 2008 email exchange was introduced as SEC Ex. 3.
[8] SEC Ex. 7.
[9] Id. at Page 5 of 81.
[10] Tr. at 27-28.
[11] Tr. at 106.
[12] Tr. at 94.

2

the email, Kapur is complaining about errors with respect to what appear to be multiple accounts belonging to him at Sarasin, including CCO and accounts identified as APC and AAIA.[5] Kapur complains that he is "not one bit happy about my hard earned money being accounted for in this manner." [6] Later in the email, Kapur makes reference to an "asset protection structure [that] requires we close CCO ASAP/ and the only entity interacting to APC is AAIA."[7]

The Court also received documents containing a 2010 email exchange between Kapur and Daniel Leon, an employee of Mossfon Trust, a Panamanian company, in which Kapur inquires about establishing an entity named the Family and Children Charitable Trust which would then open an account at Bank Vontobel in Switzerland.[8] When Leon asks Kapur about the origin of the funds to be deposited in the Vontobel account, Kapur stated that "it is my savings and earnings over the years from my past work experiences and my businesses (investment advisory, investment management)."[9]

An accountant from the SEC, Brad Mroski, testified that the Family and Children Charitable Trust had wired funds to Bina Rai that were used to pay Kapur's personal expenses.[10]

Kapur's efforts to explain this evidence were unconvincing to say the least.

Although Kapur had in 2014 testified that he had not recollection of the Sarasin transfer and had testified to the SEC that the transfer was a loan to his brother,[11] Kapur

---

[5] Id.
[6] Id.
[7] Id.
[8] SEC Ex. 7.
[9] Id. at Page 5 of 81.
[10] Tr. at 27-28.
[11] Tr. at 106.

3

testified at the hearing that the money that was discussed in his email to Stiboldt at Bank Sarasin belonged to a client:

> It was a client's money. We often personalized managed accounts and also give an optimistic view of assets to come into managed accounts when we were dealing with bank staff. It helped provide better servicing to us, and it helped better meet the reasonable needs of our clients.[12]

Kapur could not identify this client, however.[13]

Similarly, Kapur testified that the email exchange with Mossfon related to a structure that he was establishing for an unidentified third party.[14] At a prior appearance before the Court, Kapur attempted to explain why this "third party" had sent funds used for his expenses by stating that the structure could "very possibly could be [for] a private lending relationship of my brother {Kabir]" which then sent the money as a loan to Rai.[15]

Kapur testified that prior to the hearing he made no effort to look for documents that might relate to his alleged managed account program,[16] and did not introduce any documents that corroborated his version of events. Notably, with respect to the claim that the money sent from the Family and Children Charitable Trust to Bina Rai was arranged by Kapur's bother Kabir, the affidavit of Kabir Kapur submitted by Kapur made no mention of the trust or any loan to Rai.[17]

---

[12] Tr. at 94
[13] Tr. at 94-95.
[14] Tr. at 130.
[15] Transcript of Proceeding April 30, 2015, p. 25-28. This transcript is attached as Exhibit B to this memorandum.
[16] Tr. at 87.
[17] Kapur Ex. 5.

4

If anything, the available evidence indicates that the managed account program did not exist. Kapur testified that at the time of the emails relating to the Mossfan emails, the managed account program had been moved into a different corporate entity, AIM Advisory Group LLC.[18] Yet Kapur had told the SEC that the AIM Advisory Group managed account platform had never been launched,[19] and that the only managed account he was involved with was a family managed account.[20] Kapur even testified in a prior hearing before the Court that AIM Advisory Group was "Bina Rai's art business."[21]

**ARGUMENT**

**THERE IS CLEAR AND CONVINCING EVIDENCE THAT KAPUR VIOLATED THE COURT'S ORDER BY FAILING TO PROVIDE TRUTHFUL AND COMPLETE TESTIMONY CONCERNING THE SARASIN TRANSFER AND SWISS BANK ACCOUNTS**

To find a party in civil contempt for failure to comply with an order of the court, "the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995). See also Time Square Foods Imps. LLC v. Philbin, 2014 U.S. Dist. LEXIS 99921,*8 (S.D.N.Y. July 21, 2014)(Engelmayer, J.)(same).

Kapur has clearly not told the truth concerning the Sarasin transfer or his Swiss accounts.

---

[18] Tr. at 99.
[19] Tr. at 101-102.
[20] Tr. at 104.
[21] Tr. at 174.

5

The documentary evidence establishes that Kapur sent $2.1 million to CCO Ltd at Bank Sarasin in 2007 and then in 2008 complained to Sarasin about the way the bank was handling his "hard earned money." The documentary evidence also establishes that Kapur established the Family and Children Charitable Trust account at Bank Vontobel in Switzerland and then used funds from that account to pay his living expenses through Bina Rai.

Kapur, however, refuses to admit these facts or provide information about the current location of the $2.1 million at Sarasin or the funds at Vontobel. Instead, Kapur insists that those entities were established for clients in connection with a "managed account platform."

Not only has Kapur failed to corroborate his version of events in any way, but the available evidence and prior testimony completely contradict his account. This evidence includes the fact that these "clients" both received Kapur's personal funds and paid Kapur's personal expenses and Kapur's prior testimony that the managed account platform was never launched and that the company that supposedly operated the managed account platform was Bina Rai's art business.

Finally, if there were anyone whose testimony would be credited in spite of being completely uncorroborated and contradicted by the available documentary evidence and prior testimony, it would not be Kapur. This Court needs no reminder that Kapur has previously shamelessly misrepresented to the Court facts about his whereabouts and medical condition. Kapur attempted to justify these misrepresentations by claiming that he was being harassed by the Schwarz Plaintiffs.[22] Kapur believes that these proceedings

---

[22] Tr. at 75.

6

are a continuation of the "harassment."[23] Despite Kapur's protestations to the contrary -- that he no longer believes it is "OK" to make false statements to the Court,[24] it is absolutely evident that Kapur has continued to make false statements to the Court in an effort to frustrate the Schwarz Plaintiffs legitimate attempts to collect their judgment against Kapur.

## CONCLUSION

The Court should grant the Schwarz Plaintiff's motion to hold Kapur in contempt and order him imprisoned until he complies with the Court's order and provides truthful testimony about the Sarasin transfer and his Swiss bank accounts.[25]

Dated: May 11, 2015
New York, New York

/s

_____

Jason L. Solotaroff
GISKAN SOLOTAROFF
ANDERSON & STEWART LLP
11 Broadway, Suite 2150
New York, NY 10004
Tel: (212) 847-8315

Counsel for Schwarz Plaintiffs

---

[23] Tr. at 89.
[24] Tr. at 90.
[25] Although the Court indicated that it would render its decision on this motion prior to the next scheduled court appearance, the Schwarz Plaintiffs believe it would be more prudent for the Court to announce its decision in Court so that, in the event the Court grants either or both contempt motions, Kapur has less opportunity to attempt to evade the Court's order.