UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket and File

SECURITIES AND EXCHANGE
COMMISSION

            Plaintiffs,

Docket No.: 11-CV-8094 (PAE)

v.

THINKSTRATEGY CAPITAL MGMT LLC,
et al.

            Defendants.


BENJAMIN SCHWARZ et al.

            Plaintiffs,

Docket No.: 09-CV-9346 (PAE)

v.

THINKSTRATEGY CAPITAL MGMT LLC,
et al.

           Defendants.


FOR:    THE HONORABLE PAUL A. ENGELMAYER


POST-HEARING BRIEF

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/3/15

RECEIVED
SDNY PRO SE OFFICE
2015 JUN -3 P 12:06

**TABLE OF CONTENTS**

Case 1:11-cv-08094-PAE   Document 66   Filed 06/03/15   Page 2 of 18

POST HEARING BRIEF

TABLE OF CONTENTS

| EXHIBIT | |
|---|---|
| 10 | POST HEARING BRIEF / SWORN DECLARATION (WITH PRE HEARING BRIEF ATTACHED) |
| 11 | CLOSING BUSINESS AND PERSONAL BANK STATEMENTS |
| 12 | FULL TAX RECORDS FROM 2003 TO 2013 (SEE ATTACHMENT/REQUEST IT BE SEALED) |
| 13 | MANJU KAPUR'S FINANCIAL ABILITY EMAIL |
| 14 | MAY 21, 2015 HEARING TRANSCRIPT |
| 15 | MAY 20, 2015 HEARING TRANSCRIPT |
| 16 | ASIA CITI TRUST EMAIL – MANAGED ACCOUNT PROGRAM |
| 17 | MOSSACK FONSECA KYC EMAIL – MANAGED ACCOUNT PROGRAM |
| 18 | NOVEMBER 28, 2014 DEPOSITION TESTIMONY ON ENGAGEMENT RING |
| 19 | BACKGROUND CHECK ON BENJAMIN SCHWARZ AND FAMILY |
| 20 | BENJAMIN SCHWARZ BIOGRAPHY |
| 21 | EMAIL FROM CHETAN KAPUR'S LANDLORD ON EVICTION PROCEEDING |

**10**

Case 1:11-cv-08094-PAE   Document 66   Filed 06/03/15   Page 4 of 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION; BENJAMIN SCHWARZ et al.<br><br>**Plaintiffs,**<br><br>v.<br><br>THINKSTRATEGY CAPITAL MGMT LLC et al.<br><br>**Defendants.** | **SWORN DECLARATION / POST HEARING BRIEF**<br><br>**Docket No.: 11-CV-8094 (PAE)**<br>**Docket No: 09-CV-9346 (PAE)** |

Chetan Kapur makes sworn declaration of the following:

1. I am a Defendant and Judgment Debtor in the above-referenced actions. I submit this Sworn Declaration to provide the Court a Post Hearing Brief.

2. I reiterate my Sworn Declaration with all supporting documentation and exhibits filed with this Court on this matter on May 18, 2015 and March 6, 2015 (Also see Defendants' Hearing Exhibit 1A through 9, and March 6, 2015 Debt statements, Loan Contracts and Expense Ledgers - *Sealed*). I reiterate that I have no source of income and possess no assets; I do not have any banking accounts, retirement accounts or offshore accounts; nor do I have an interest in or control over any entity; nor do I have any funds held on my behalf by others. My debts and insolvency have only increased from the time of this default judgment to date.

3. I further reiterate that I have very plainly and unmistakably established that compliance with this Court's orders awarding monetary sanctions is impossible as I am insolvent and in major debt (See March 6, 2015 Debt statements, Loan Contracts and Expense Ledgers - *Sealed*). I re-submit or submit the independent 'Benefit to Investor and Out of Pocket Expense' Analysis (Defendants' Hearing Exhibit 9 highlighting Section 3, 4 and 5 /Exhibit 9 also includes my tax returns from 2003), my closing/empty business and personal bank statements (Exhibit 11) and my full tax records from 2003 to 2013 (Exhibit 12) to demonstrate how the firm's resources

were completely depleted, placing the firm and myself in major debt. All business and personal banking and credit card statements were provided to the SEC twice in 2011 to demonstrate this further, showing zero ending bank balances and substantial debts.

4. I went insolvent due to the 3 years during which ThinkStrategy received no fees from its core fund, and covered all the operating and infrastructure expenses of the Funds and the Firm – depleting all company resources and placing me in debt. The detailed 'Benefit to Investor Analysis' (Defendants' Hearing Exhibit 9) prepared in the latter part of 2011, supported by all the banking statements and tax records demonstrates this (even though my attorney that independently prepared this comprehensive analysis was presenting a worst case scenario to show disgorgement at its worst taking the SEC 'claims' as a given, the results were nonetheless a very significant net benefit to investors) along with my loan agreements and credit card statements. Very significant operating and business expenses for the Funds and Firm were in fact expended over a 3 year period depleting the firms resources and placing me in debt. Expenses that would otherwise have been charged to the Funds by any liquidator. I did do everything I could for the firm's investors during the worst financial and banking crisis in US history since 1929, including work on a no fee voluntary basis for 3 years and forego both my creditor and investor claim towards the Fund (which is something I believe no other manager would ever have done).

5. Further, my parents who have primarily provided or organized the loans to pay for my expenses to date, have clearly noted in their Affidavits (Defendants' Hearing Exhibit 3, Section or Point 8, 9,10) that the reason their have refused to loan me any more funds for legal expenses since November 2013 is because they are simply financially unable to support both my legal and personal expenses. They also clearly note that they have been having extreme difficulty

2

supporting my personal expenses after having loaned me so much over the past 3 years (which is why since end 2014 rent and credit card bills have been getting paid with a very significant delay – See Defendants' Hearing Exhibit 2 – Manju and Naveen Kapur Loan Appendix), and require that I find a job immediately as they can not loan me much, if any, more.

6. More specifically, my parents have told me they are only able to continue supporting my expenses for one more month whether I am able to find a job or not. Further, they have told me that if I am held in contempt because I am financially unable to pay default judgments or because I am unable to recollect specific details about Company transactions from many many years ago (even though the Company generally dealt in very large amounts, with hundreds of counterparties, engaged in hundreds of thousands of transactions & has been defunct for 5 years now), then too they are not in a position to help with legal expenses. They recommended that I contact the Legal Aid Society of New York and check to see if the New York Bar Association has a pro bono program or can direct me on obtaining free legal assistance – both of which I am in the process of doing. I have also pleaded with my parents to please consider settling all the default judgments collectively for whatever they can afford, also if it is the equivalent of one month's worth of my expenses-- this way they can resolve all collection matters towards me. I have also informed the Plaintiffs that I will facilitate conversations with my family, but to keep in mind that my family has already overextended themselves in supporting me with loans for 3 years and have also had to obviously pay for their own expenses and others who are dependent on them. Accordingly, they have no or practically no financial ability to assist me any further (Exhibit 13).

7. Having more closely analyzed the expenses my parents have paid for me since the beginning of the year 2015 (See Defendants' Hearing Exhibit 2 – Manju and Naveen Kapur

Loan Appendix), and that relates to invoicing for the Year 2015 (payments on Jan 5 and Jan 21 related to invoicing for Year 2014) – the average monthly amount expended till the end of May 2015 was $3,377.04 per month (this excludes May rent that still remains unpaid). Accounting for May's rent that is still unpaid, the average monthly amount expended till the end of May 2015 will be $4,047.04 per month (any higher amount mentioned prior included amounts paid by my credit card companies increasing my credit card debt, and as the Court knows my parents only pay my credit card and charge card minimums). I have also considered moving from my apartment, where I have been living for the past 11+ years (which is a small one bedroom rental), to an even more economical place. However, the costs of finding a place and moving at this point would more than offset any cost savings. It would also lead to increased commuting costs and increase the difficulty in me finding a better paying job in the city. Further, since my parents are not able to support my expenses beyond next month, me moving at this point will simply disrupt my life and not lead to any meaningful net-net benefit.

8. I submit the transcripts for the hearing on May 21 and May 20 (Exhibit 14 and 15), re-submit the transcript for the hearing on April 30 (Defendants' Hearing Exhibit 6), and include all Defendants Hearing Exhibits 1A to 9 to address any of the Plaintiff's egregiously false and unfounded suspicions that have been based on <u>*extremely dated, out-of-context and partial facts*</u> (SEC Exhibit 3 to 8 ignore the Managed Account Program, its procedural phases and client correspondence), <u>*erroneous facts*</u> (payment of the Chase credit card bill – which was paid by Manju Kapur when she was in a cash flow position to do so, and not by Bina Rai), or <u>*invented facts*</u> (that I was setting up an asset protection structure in mid-2010 to avoid payment on potential future judgments, when from the <u>SEC Exhibit 4 (or Def. Exhibit 16)</u> itself one can see another estate planning structure is being setup at Asiaciti Trust Group as part of our

4

Managed Account Program in October 2009 - prior to any litigation against our firm or me). Also I am sure the Court has the sapience to see that the experienced litigators of the Plaintiffs are very able to create wrongful suspicion in Court and leave the Court with a wrong impression by merely asking certain inappropriate and unfounded questions towards a naïve innocent such as myself who is still getting familiar with Court procedures (even if a correcting or clarifying response is provided). I also make myself fully available to your Honor in his chambers at any time to address any of the Plaintiff's unfounded and false suspicions or any other matter on these cases. Last, I pray the Court focuses on the demonstrated facts of the case and not on unfounded, false suspicions or contorted facts.

9. I further note that the Commission was directed per the law in the Court Order dated March 11, 2015 to identify the source of funds it expects me to draw on to comply with the Court's monetary sanctions (for the default judgments). The SEC instead reverted with an argument based on very old, self-serving and out-of-context emails that give the appearance that I had funds eight years and five years ago. Emails that could have easily been addressed at the deposition I gave on November 28, 2014. In summary, a wrongful argument based on their unfounded and false suspicions, assumptions and presumptions that were based on outdated, out-of-context or erroneous facts. Further, I strongly believe the Plaintiffs themselves know I don't have any assets and am in major debt and insolvent, but continue this process in hopes that the harassment will lead to getting blood from a stone. Nonetheless, I have plainly and unmistakably demonstrated that compliance with this Court's orders awarding monetary sanctions is impossible as I am truly insolvent and in major debt.

10. To specifically address the 2007 wire transfer to JP Morgan Chase Bank / Bank Sarasin – on proper reflection per the limited information provided, this could have possibly

5

been (a) an accrued payment to a service provider for services rendered (such as consulting, advisory or placement agent services) (b) an accrued rebate to an institutional investor (certain institutional investors by mandate could only invest in Funds with fee structures below a threshold level – thus a rebate was given that was passed on to their underlying investors – accordingly allowing our Funds to be eligible for investment) (c) an error reversal, where a Fund or Managed Account investor erroneously sent the funds to the Management Company instead of the Funds or Managed Account structure (this was something that happened a few times I recall with a reversing transfer then being required). On the same statement there were 2 other very large transactions. The $1.6M transaction could have possibly been (a) a payment of accrued fees to the Investment Manager (b) a loan to the Management company or (c) a redemption of an investment. It is also important to understand that the Management company maintained several accounts at Wachovia as well as other banks at this time. Thus, simply looking at one account at one bank when we generally dealt in large amounts is not a constructive way to analyze any transaction. Next, as it relates to the structuring project at Mossack Fonseca as part of our Managed Account Program (Phase 1), it was standard for KYC to be conducted by the law firm or trust company towards the persons they were dealing with, and who were paying their invoices. As part of KYC, they wanted background information, references, source of funds, information of any lawsuits, Company insurance certificates (all of which was asked of us by Mossack Fonseca per SEC Exhibit 7). However, when they wanted my personal tax returns I was not willing to accommodate, as I was not about to provide my personal tax returns as part of a structuring project for a third party (See SEC Exhibit 7, Pg 56 of Pg 81 or Def. Exhibit 17). We were in Phase 1 of our Managed Account Program so we gave the impression it was for us, but certainly this was not the case. And even if we informed them of our client at that stage

(requiring the client to get involved, which is not what our clients wanted) they would still need to conduct full due diligence on us and the underlying client. Further, how would it have even been possible for me to have had $6 -$7 million per year at that point. This was clearly the client's funding amount. ThinkStrategy's Funds were is liquidation for 2 years at that point, and we had almost fully expended all resources in operating and infrastructure costs, plus the alternative investment industry was still suffering in the aftermath of the crisis, thus it simply is not realistic to think I was able to provide that funding. (Importantly, also see Exhibit 14, May 21 testimony, Pages 124 to 131, 132 to 145)

11. Additionally, I will address sundry items. I will note that in my former company, ThinkStrategy Capital Management LLC ("Company"/ "Firm" / "ThinkStrategy"), that has been defunct for about 5 years now, employees used to receive bonus compensation each year in line with industry compensation standards. I myself in all the years I managed ThinkStrategy only took one bonus in 2008 or early 2009 (as an owner's personal draw) to purchase an engagement ring (a bonus that was lower than any other senior employee that year). Once the engagement was called off later in 2009, the girl eventually wanted to give the ring to my mother. The ring then belonging to my mother was sold by her in 2009 (as was clearly noted to the SEC in my Nov 28, 2015 deposition with them – See Exhibit 18). I was informed by my mother that she did not get close to the amount paid for the ring, and that she used the proceeds for a variety of purposes. As it relates to my passport that Mr. Solotaroff wanted submitted to the Court, I have to say, it is amusing to me to think that Mr. Solotaroff would think I would flee the United States, my home for the past 22 years (or my full adult life) because I truly and genuinely am not in a financial position to pay his client's default equivalent judgments – especially considering all the very strong ties I have to the United States (my home): my godmother- Bina Rai- is a US

7

Citizen and resident who has been more than a parent to me and to whom I am closer to than my parents, my oldest brother - Karan Kapur- and his entire family are US Citizens and residents, my cousin sister Shai Kapur (who is like a sister to me) is a US Citizen and resident, numerous aunt and uncles who have been my support are US Citizens and residents, including mostly all my friends are citizens and/or residents of the United States. Further, if Mr. Solotaroff wanted to wrongfully argue that I tried to flee when I was wrongfully indicted. I would note for the record that I was in no way fleeing, I had planned that 10 day vacation for months and had a confirmed return ticket. It even took me a full month just to get a visa appointment to be able to make that trip, and was my first vacation in 3.5 years (that was paid for almost entirely by credit card points). Further, I had no knowledge of the sealed indictment, and my former attorney had proactively told me that there was no possibility of me being indicted per the facts and truth that the SEC had in their possession. In addition, I was packed for a 10 day trip, and had scheduled appointments in my calendar for when I returned. Last, I will note for the record that a vast majority of Company files were discarded when we moved out of our offices in April 2011 as we did not have the resources nor saw the need to spend on storage. Further, all files retained by legal were returned when I was undetained and was discarded by my family as they thought the matter was closed, and did not see the purpose of spending funds on storage. Accordingly, I am now severely handicapped when the SEC all of a sudden comes up with wrongful suspicions based on partial, out-of-context and outdated information.

12. I have also discussed the serious credibility issues of both the SEC and the Schwarz attorney in Court (Exhibit 14 – May 21, 2015, Page 143-145) that have been well documented and demonstrated in these cases (and in related cases), and I urge the Court to give this matter proper reflection. The SEC much like it did with the calculations of the Capital Fund

performance returns for both the A and B Class (where the 'SEC calculated' performance returns which were based on 'partial data' were later proven false), are again showing a similar pattern of making arguments based on partial information when referring to the Managed Account Program's structuring projects (such as the projects done for clients with Mossack Fonseca and AsiaCiti). And to date, Mr. Solotaroff has not apologized to the Court for his blatant lies to the Court (which are well documented on the car title issue), whereas I have taken responsibility for any misstatement or misadvisement, corrected the record and have apologized repeatedly.

13. Lastly, I would like to note that the Schwarz family, when they first invested told the firm and me that they were more than qualified, accredited investors with a net worth well in excess of $10 million with assets from retirement accounts, inheritance and income. They tune quickly changed when the Funds were put into liquidation in 2008, and further they made it clear to us that they were going to harass us until they received preferential treatment over other investors (and effectively wanted their investments that were held by KBC Financial, the Fund's lender and custodian, to be paid out to them). I also attach a basic background check on the Schwarz family showing they own atleast 4-5 sizeable properties across the United States in affluent neighborhoods (Exhibit 19, Page 3), and that Benjamin Schwarz (the head of this household) is successfully employed by Random House having been educated at Yale and Oxford University (Exhibit 20). Further the Schwarz family is able to afford an established law firm such as Giskan Solotaroff Anderson & Stewart LLP with their impressive multi-story offices, and are without a doubt my defunct Firm's most litigious investors (The Schwarz' also have suits against others, and parties have premises liability, defamation and other lawsuits against them). On the other hand, I being as much of a victim (if not more so) to the financial crisis, having both a priority creditor claim in the same fund and an investor interest (both of

9

which I wrote off for the benefit of my investors) – am on the verge of being evicted (Exhibit 21) and am having extreme difficulty in obtaining a job outside my field of study and experience (having not had the resources to defend against the SEC's 'claims' and thus having had to accept their terms which included a bar and default penalties/disgorgement). I am without a doubt in this situation today because I fully depleted the Company's resources and went into debt myself for the benefit of investors in my former Funds. Nonetheless, I have done everything feasible to try to get the default judgments on these cases satisfied.

In conclusion, irrespective of the SEC's wrongful suspicions which are from many years ago, I have very plainly and unmistakably established that compliance with this Court's orders awarding monetary sanctions is impossible as I have no assets or income, or control over or interest in any entity, nor do I have any funds held on my behalf by others, and am in fact insolvent and in major debt.

I pray that the Court does not hold me contempt for not recollecting specific details of a Company transaction from 8 years ago (or many years ago) for which I have made every effort to provide the practical possibilities in the absence of any substantive information to remind me on such details (especially when the Company generally dealt in very large amounts, with hundreds of counterparties, engaged in hundreds of thousands of transactions & has been defunct for 5 years now).

Further, I pray that this Court does not hold me in contempt for being financially unable to pay default judgments, when I have clearly noted my intention to start to pay these upon gaining

employment (and have pleaded with my parents to try and settle this for whatever they can afford), and I have plainly and unmistakably demonstrated that compliance with these Court's orders awarding monetary sanctions is impossible via business and personal bank statements, tax records, an independent 'Benefit to Investor' and 'Out-of Pocket Expense' analysis, affidavits from family (supported by their loan contracts and bank statements), and sworn written and in Court testimony.

I declare under penalty of perjury that to my knowledge the foregoing is true and correct.

Executed on May 29, 2015,

_____
Chetan Kapur

PETER MERTZ
Notary Public, State of New York
No. 02ME5046271
Qualified in New York County
Commission Expires July 10, 2015

11



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION

                           **Plaintiffs,**

v.

CHETAN KAPUR and LILABOC LLC

                           **Defendants.**

**SWORN DECLARATION / PRE-HEARING BRIEF**

**Docket No.: 11-CV-8094 (PAE)**

Chetan Kapur makes sworn declaration of the following:

1. I am a Defendant and Judgment Debtor in the above-referenced action. I submit this Sworn Declaration to respond to Plaintiffs' Reply Memorandum on civil contempt filed on March 25, 2015 and to provide the Court a Pre-Hearing Brief.



2. I reiterate my Sworn Declaration with all supporting documentation filed with this Court on this matter on March 6, 2015 (Exhibit 1). I reiterate that I have no source of income and possess no assets; I do not have any banking accounts, retirement accounts or offshore accounts; nor do I have an interest in or control over any entity; nor do I have any funds held on my behalf by others. My debts and insolvency have only increased from the time of this default judgment to date.

3. I further reiterate that I have very plainly and unmistakably established that compliance with this Court's orders awarding monetary sanctions is impossible. I submit the following to highlight this:

    (a) In Section 4 of my March 6 Sworn Declaration I clearly demonstrate how and why my former Company's resources were completely depleted placing the Company and me in debt. I detail the closing Wachovia bank statements (personal and business) provided to the SEC showing no assets. The SEC simply cannot provide any evidence

to refute these facts. Also my former attorney in the 'Benefit to Investor' Analysis provided to the Court on this case details the Out-Of-Pocket expenses specifically that depleted the Company's resources placing me in debt with all backing bank and other statements (I can re-submit this voluminous analysis if needed).

(b) In 2011, with no business or personal assets or income, and only increasing debts – I had no choice but to turn to my family for financial assistance. I have submitted the detailed, signed Loan Agreements from each family member that has loaned me monies (Exhibit 2).

(c) I further submit Affidavits from each family member (along with the Loan Agreements they maintain) detailing their source of funds (Exhibit 3, 4, 5). They clearly also note that their loan agreements are fully consistent with their banking statements – that have been provided to the SEC. I further note that the vast majority of the $719,688.85 in total loans from different family members for legal and personal expenses over the past 3+ years did not come from Bina Rai. Further, of the loans Bina Rai had taken over the years from Citibank (2013/14 - $33,500), Manju Kapur (2013/14 - $65,562+) and Kabir Kapur's private lending relationship (2011/12 - $146,817) – she has used these proceeds for her personal expenses, business expenses, paydown of her high rate credit card debt and to assist me with loans in my time of need (though at the time I was receiving these loans I thought it was coming from her savings, and have only recently or relatively recently learned otherwise). (Exhibit 4)

(d) As part of Section 3(b) (c) of my March 6 Sworn Declaration I have provided detailed ledgers of the living expenses paid by my credit card companies, and detailed

2

ledgers of the rent, credit card minimums and legal expenses paid by different members of my family (that is fully consistent and foots with their loan appendix detailing). Further, if I had assets it would make no sense whatsoever for me to have taken on the burden of high interest rate credit card debt at the maximum limit of my credit cards all these years.

(e)  I will note that my parents who have primarily provided or organized the loans to pay for my expenses, have clearly noted in their Affidavits (Exhibit 3) that the reason their have refused to loan me any more funds for legal expenses is because they are simply financially unable to support both my legal and personal expenses. They also clearly note that they have been having extreme difficulty supporting my personal expenses after having loaned me so much over the past 3 years (which is why for quite a while rent and credit card bills have been getting paid with a very significant delay), and require that I find a job immediately as they can not loan me much, if any, more.

4.  I further note that the Commission was directed in the Court order dated March 11, 2015 to identify the source of funds it expects me to draw on to comply with the Court's monetary sanctions (for the default judgment and deposition expenses). The SEC instead reverted with an argument based on self-serving and out-of-context emails that give the appearance that I had funds eight years and five years ago. Emails that could have easily been addressed at the deposition I gave.   In summary, a wrongful argument based on their unfounded and /or false suspicions, assumptions

3