and presumptions that were in many instances based on contorted or out-of-context

facts and testimony.

a)      While all of what the SEC notes on managed accounts is from many years ago

(approximately 8 and 5 years ago), I will provide my best recollection to address their

suspicions, and provide relevant background about the managed accounts

ThinkStrategy or I did as part of ThinkStrategy's Managed Account Program

("MAP") (Exhibit 6 – April 30 testimony, Page 17-21, 22-35). Further, while bank

statements have been provided by Manju Kapur, Karan Kapur and Bina Rai's (or

their banks) that confirms their source of funds, along with signed loan contracts, and

sworn testimony on the source of funds of each family member that has loaned me

monies (Exhibit 3, 4, 5), the SEC chooses to focus on 2 loans to Ms. Rai from about 4

years ago that she utilized for both her personal and business needs or activities.

Further, they contort the testimony given about Mr. Kabir Kapur's loan – my brother

who supported me for only a few months (having cash flow issues my brother could

not send monies directly but needed to coordinate with US family and friends to

provide his loans) (Exhibit 5). Last, they contort the facts about Ms. Rai paying my

called –in Chase debt when it is abundantly clear per the evidence that my mother,

Manju Kapur paid this. Ms. Rai clearly noted in her in-court testimony (and sworn

written communications to the Court) that she had borrowed monies from her bank,

credit card companies and had personal loans (Exhibit 7). Ms. Rai noted in her in –

court testimony (and her sworn letters to the Court) that she largely used the proceeds

from her sale of her car to repay part of her significant debts (part of her bank loans

and lines, her credit card debts and part of her personal loans) (Exhibit 7). The fact

that Manju Kapur paid my called-in Chase debt when she was in a cash flow position to do so, dosen't in anyway evidence that Bina Rai's car proceeds were used to pay this debt (Exhibit 3 Pt.7, Exhibit 6 – April 30 testimony, Page 22-23). Accordingly, Manju and Naveen Kapur rightfully included this payment as part of their loan to me.

b)    Lilaboc LLC or ThinkStrategy Capital Management LLC ("ThinkStrategy") started its business by way of managed account. From the very beginning ThinkStrategy had a Managed Account Program ("MAP") that can be evidenced from the Company's offering materials and websites (Exhibit 8, Numerous Other MAP Materials and Models are available upon request). The MAP was a comprehensive program that offered full structuring and administrative services in addition to the investment management program.  As part of the MAP, the firm setup structures as instructed by the clients for the clients' estate planning, business, investment or other needs (including setup of bank or brokerage accounts for the structure at the banks or brokerages instructed by the clients). ThinkStrategy worked with numerous law firms or trust companies over the years for a variety of reasons including the incorporation of estate planning, business or investment structures (such as Foundations, Trusts, Incorporations, Limited Partnerships or Limited Funds) for the MAP. We also worked with registered agents for structuring purposes. I would not define any of these law firms, trust companies (that provided a variety of other services as well) or registered agent companies as "asset protection companies" simply because they created structures for estate planning, business or investment needs and the structure inherently had some asset protection properties (if a client

specifically requested an asset protection structure we would do as instructed but that did not make the incorporating law firm or trust company an "asset protection company" ).

Typically, the structure (with bank/brokerage setup) was created in our/my name ("MAP Phase 1") and transferred to the client (the directorship, ownership or equivalent would be transferred) ("MAP Phase 2"). Once the structure was transferred, the client would fund the account ("MAP Phase 3"). If there was a mandate to do a managed account, we would proceed to manage the funds (and provide any administrative services as instructed) ("MAP Phase 4"). While the above process was standard (with clients wanting to be serviced so as to eliminate the inconveniences of procedural setup), things were always customized on a case by case basis.

I will also note as part of this background that ThinkStrategy corresponded or dealt with hundreds of sophisticated counterparties (institutional investors, qualified retail investors, institutional and retail advisors or their clients, MAP clients, potential clients and/or each of the their one to many entities), and hundreds of service providers (between our Management Company/Funds/MAP service providers, and underlying sub-funds service providers for the fund-of-funds products).

5.      The SEC's argument that I have purposefully sought to insulate my assets from Court's reach and that I have created an elaborate system to provide the appearance of insolvency is simply false. The truth of the matter is that I went insolvent due to the 3 years during which ThinkStrategy received no fees from its core fund, and covered all the operating

and infrastructure expenses of the Funds and the Firm – depleting all company resources and placing me in debt. My former attorney provided a detailed report based on bank statements of this 'Benefit to Investor Analysis' to this Court (even though the attorney was presenting a worst case scenario to show disgorgement at its worst taking the SEC 'claims' as a given, the results were nonetheless a very significant net benefit to investors). Very significant operating and business expenses for the Funds and Firm were in fact expended over a 3 year period depleting the firms resources and placing me in debt. Expenses that would otherwise have been charged to the Funds by any liquidator. I did do everything I could for the firm's investors during the worst financial and banking crisis in US history since 1929, including work on a no fee voluntary basis for 3 years (which is something I believe most other managers would never have done). Further, the SEC theory that I exercise control over any entity, either domestically or internationally, is false. The SEC's theory that I began actively searching for an off-shore asset protection scheme to hinder creditors after the Motion to Dismiss on the Schwarz case was denied in March 2010 is false. The MAP had several other structuring projects prior to this date (as can be seen by the Plaintiff's own exhibits). The truth of the matter is that ThinkStrategy did not have any meaningful assets left by that point to protect, and what was left was utilized to continue to pay for operating and infrastructure costs of the Funds. Last, as a matter already on record, the SEC had knowingly used partial or contorted information to calculate returns for the TS Capital Fund A and B Class ("Capital Fund") in their claims. The Capital Fund's reported returns were subsequently proven fully accurate from data in the SEC's possession. While I am not allowed to deny the SEC's prior claims, I will note that I did not have the resources to defend against them - resulting in the default judgment they have put into collections. I feel like I have been harassed and bullied in general, and now again am being subjected to the same for default judgment

collections after being wrongfully indicted, and disbarred from my field of experience. I pray

that the Court please put an end to this allowing me the time to obtain a job, which will result in

a start towards me paying back my creditors.

In conclusion, irrespective of the SEC's suspicions of me having assets many years ago because

of our MAP correspondence or because of a loan to Bina Rai from 3.5-4 years ago that she

utilized for a variety of purposes -- I have very plainly and unmistakably established in Section

2, 3 above that compliance with this Court's orders awarding monetary sanctions is impossible

as I have no assets or income, or control over or interest in any entity, and am in fact insolvent

and in major debt.

I declare under penalty of perjury that to my knowledge the foregoing is true and correct.

Executed on May 16, 2015,

_____
Chetan Kapur
LAWSON ESTRIDGE, NOTARY PUBLIC
STATE OF NEW YORK
No: 01ES4900397
QUALIFIED IN QUEENS COUNTY
CERTIFICATE FILED IN N.Y. COUNTY
COMMISSION EXPIRES 01/11/20__

**11**

brief



## Business Cash Manager Checking

**WACHOVIA**

01        2000018666298   751  130        0   40
**Electronic Delivery**

||ııılllıılıınıılılılılılıl
LILABOC LLC
D/B/A  THINKSTRATEGY  CAPITAL  MGMT  LLC        CB
150  EAST  52ND  STREET,  11TH  FLOOR
NEW  YORK,  NY  10022

---

# Business Cash Manager Checking

6/01/2011 thru 6/30/2011

Account number:        2000018666298
Account owner(s):      LILABOC LLC
                       D/B/A THINKSTRATEGY CAPITAL MGMT LLC

## Account Summary

| | |
|---|---|
| Opening balance 6/01 | $0.00 |
| Deposits and other credits | 5,370.84 + |
| Other withdrawals and service fees | 330.27 - |
| **Closing balance 6/30** | **$5,040.57** |

## Deposits and Other Credits

| Date | Amount | Description | |
|---|---|---|---|
| 6/06 | 2,034.77 | AUTOMATED CREDIT PAYCHEX CO. ID. 1161124166 110606 CCD MISC 40352200000204X | PAYROLL |
| 6/06 | 2,787.42 | AUTOMATED CREDIT PAYCHEX CO. ID. 1161124166 110606 CCD MISC 40352200000203X | PAYROLL |
| 6/13 | 452.06 | COUNTER DEPOSIT | |
| 6/16 | 96.59 | AUTOMATED CREDIT PAYCHEX EIB CO. ID. 9000000021 110616 CCD MISC X40505400000045 | INVOICE |
| **Total** | **$5,370.84** | | |

## Other Withdrawals and Service Fees

| Date | Amount | Description | |
|---|---|---|---|
| 6/08 | 89.38 | AUTOMATED DEBIT  CON ED OF NY CO. ID. 0135009340 110608 PPD MISC 422137065500225 | INTELL CK |
| 6/09 | 234.31 | COMMERCIAL SERVICE CHARGES FOR MAY 2011 | |
| 6/10 | 6.58 | AUTOMATED DEBIT  PAYCHEX EIB CO. ID. 9000000021 110610 CCD MISC X40264100008476 | INVOICE |
| **Total** | **$330.27** | | |

---



# Business Cash Manager Checking

**WACHOVIA**   02        2000018666298   751   130           0    40

---

## Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|-------|--------|-------|--------|-------|--------|
| 6/06 | 4,822.19 | 6/09 | 4,498.50 | 6/13 | 4,943.98 |
| 6/08 | 4,732.81 | 6/10 | 4,491.92 | 6/16 | 5,040.57 |

*UPDATED FUNDS AVAILABILITY POLICY AS OF 06/22/11*
*WE WILL INCREASE THE AMOUNT OF FUNDS AVAILABLE TO YOU IF A*
*HOLD IS PLACED AGAINST YOUR DEPOSIT TO $200 ON THE FIRST*
*BUSINESS DAY AFTER THE DAY OF YOUR DEPOSIT (SECOND BUSINESS*
*DAY FOR CERTAIN ALASKA DEPOSITS).*

---



# Business Cash Manager Checking

03      2000018666298   751  130           0   40

**WACHOVIA**

---

## Customer Service Information

**For questions about your statement
or billing errors, contact us at:**

| | Phone number | Address |
|---|---|---|
| Business Checking, CheckCard & Loan Accounts | 800-566-3862 | WACHOVIA BANK |
| TDD    (For the Hearing Impaired) | 800-835-7721 | D1118-02D |
| Commercial Checking & Loan Accounts | 800-222-3862 | P O BOX 563966 |
| | | CHARLOTTE NC 28256-3966 |

---

## To Balance Your Account

| | List Outstanding Checks and Withdrawals | | | |
|---|---|---|---|---|
| 1. Compare your account register to your account statement for unrecorded transactions (such as ATM, CheckCard, Interest earned, fees, etc.)  Your new account register total should match the adjusted balance in line 6 below. | Ck. No. | Amount | Ck. No. | Amount |
| | | | | |
| 2. Write in the closing balance shown on the front of account statement. _____ | | | | |
| | | | | |
| 3. Write in any deposits you have made since the date of this statement. _____ | | | | |
| _____ | | | | |
| _____ | | | | |
| _____ | | | | |
| 4. Add together amounts listed above in steps 2 and 3. _____ | | | | |
| 5. In the section to the right, list and total all checks and withdrawals that you have made that are not reported on your account statement. Write in the total here. _____ | | | | |
| | | | | |
| 6. Subtract the amount in line 5 from the amount in line 4.  This is your adjusted balance and should match the balance in Step 1 | | | Total | |

In Case of Errors or Questions About Your Electronic Transfers:  Telephone us at 800-222-3862 or write to us at WACHOVIA BANK, D1118-02D, P O BOX 563966, CHARLOTTE NC 28256-3966, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
1.  Tell us your name and account number (if any).
2.  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3.  Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days to do this, we will credit your account for the amount you think is in error.  You will have use of the money during the time it takes us to complete our investigation.

Wachovia Bank and Wachovia Bank of Delaware are divisions of Wells Fargo Bank, N.A., Member FDIC

---



Business High Performance Money Market

01    2000018666272 751 130        0 40      SAFEKEPT      Replacement Statement        075

LILABOC LLC
DBA THINKSTRATEGY CAPITAL MANAGEMENT      CB
LLC
150 EAST 52ND STREET, 11TH FLOOR
NEW YORK, NY 10022

Business High Performance Money Market                    10/30/2010 thru 11/30/2010

Account number:        2000018666272
Account owner(s):      LILABOC LLC
                       DBA THINKSTRATEGY CAPITAL MANAGEMENT
                       LLC

Account Summary

| | |
|---|---|
| Opening balance 10/30 | $0.19 |
| Other withdrawals and service fees | 17.00 - |
| Closing balance 11/30 | $16.81 - |

Other Withdrawals and Service Fees

| Date | Amount | Description | |
|---|---|---|---|
| 11/09 | 17.00 | COMMERCIAL SERVICE CHARGES FOR OCTOBER 2010 | 000000000000000 |
| Total | $17.00 | | |

Daily Balance Summary

| Dates | Amount | Dates | Amount | Dates | Amount |
|---|---|---|---|---|---|
| 11/09 | 16.81 - | | | | |

NEW IRS REQUIREMENT: EFFECTIVE DECEMBER 17, 2010, WE WILL STOP
ACCEPTING PAPER FEDERAL TAX DEPOSIT COUPONS. MOST BUSINESSES
USING COUPONS MUST ARRANGE TO MAKE THOSE DEPOSITS
ELECTRONICALLY. FOR MORE INFORMATION ABOUT THIS CHANGE OR
TAX PAYMENT OPTIONS, CONTACT YOUR TAX ADVISOR OR VISIT IRS.GOV.

WACHOVIA BANK ,   BUSINESS BANKING NEW YORK CITY                    page 1 of 2

Business High Performance Money Market

02    2000018666272 751 130      0  40      SAFEKEPT    Replacement Statement      075

Customer Service Information

For questions about your statement
or billing errors, contact us at:          Phone Number    Address

Business Checking, CheckCard & Loan
Accounts                                   800-566-3862    WACHOVIA BANK
TDD  (For the Hearing Impaired)            800-835-7721    D1118-02D
Commercial Checking & Loan Accounts        800-222-3862    P O BOX 563966
                                                           CHARLOTTE NC 28256-3966

In Case of Errors or Questions About Your Electronic Transfers:  Telephone us at
800-222-3862 or write to us at WACHOVIA BANK, D1118-02D, P O BOX 563966, CHARLOTTE NC
28256-3966, as soon as you can, if you think your statement or receipt is wrong or if you
need more information about a transfer on the statement or receipt.  We must hear from you
no later than 60 days after we sent you the FIRST statement on which the error or problem
appeared.
1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you
   can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.  If we take more
than 10 business days to do this, we will credit your account for the amount you think is
in error.  You will have use of the money during the time it takes us to complete our
investigation.

Wachovia Bank and Wachovia Bank of Delaware are divisions of Wells Fargo Bank, N.A., Member FDIC

WACHOVIA BANK ,  BUSINESS BANKING NEW YORK CITY                    page 2 of 2

Primary account number: **1010295171063**  ■  August 6, 2011 - September 7, 2011  ■  Page 2 of 6



*Fees may apply for transfers of funds from Wells Fargo to other financial institutions.

Welcome to your new Wells Fargo statement. Your new statement is designed to help you quickly locate information that is important to you. It includes an enhanced reader-friendly layout, new sections that allow key account information to be quickly reviewed, and transaction information presented in chronological order. For additional details, visit wellsfargo.com/newstatement. If you have questions about your new statement, speak to your Banker or call the number at the top of your statement. Our Phone Bankers are available to assist you 24 hours a day, 7 days a week.

## Summary of accounts

### Checking and Savings

| Account | Page | Account number | Ending balance last statement | Ending balance this statement |
|---|---|---|---|---|
| Crown Banking  * | 2 | 1010295171063 | 4,288.27 | 0.12 |
| Wells Fargo Way2Save  * Savings | 4 | 3000220852873 | 13.76 | 0.02 |
| **Total deposit accounts** | | | **$4,302.03** | **$0.14** |

## Crown Banking  ®

### Activity summary

| | |
|---|---|
| Beginning balance on 8/6 | $4,288.27 |
| Deposits/Additions | 2,150.73 |
| Withdrawals/Subtractions | - 6,438.88 |
| **Ending balance on 9/7** | **$0.12** |

Account number:  **1010295171063**

**CHETAN KAPUR**

*New York account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN): 026012881

### Overdraft Protection
Your account is linked to the following for Overdraft Protection:
- Savings - 003000220852873
- Credit Card - XXXX-XXXX-XXXX-4732

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.12 |
| Average collected balance | $2,684.24 |
| Annual percentage yield earned | 0.05% |
| Interest earned this statement period | $0.12 |
| Interest paid this year | $5.39 |

Primary account number: **1010295171063** ■ August 6, 2011 - September 7, 2011 ■ Page 3 of 6



## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 8/26 | | Deposit Made In A Branch/Store | 550.00 | | |
| 8/26 | 104 | Check | | 3,350.00 | 1,488.27 |
| 8/29 | | American Express Elec Remit 110826063322116 Chetan Kapur | | 2,756.23 | |
| 8/29 | | Chase Epay 110827 1177494023 Chetan Kapur | | 219.00 | |
| 8/29 | | Overdraft Protection From 3000220852873 | 13.76 | | |
| 8/29 | | Overdraft Xfer From Credit Card OR Line | 1,473.20 | | 0.00 |
| 9/7 | | Con Ed of NY Intell Ck 110906 422137065500225 Chetan Kapur | | 113.65 | |
| 9/7 | | Overdraft Xfer From Credit Card OR Line | 113.65 | | |
| 9/7 | | Interest Payment | 0.12 | | 0.12 |
| **Ending balance on 9/7** | | | | | 0.12 |
| **Totals** | | | **$2,150.73** | **$6,438.88** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Summary of checks written   *(checks listed are also displayed in the preceding Transaction history)*

| Number | Date | Amount |
|---|---|---|
| 104 | 8/26 | 3,350.00 |

When this account was converted from Wachovia to Wells Fargo, any previous Overdraft or Returned Item (Insufficient Funds - NSF) fees did not carry over to this statement. Please refer to your last Wachovia account statement for information on Overdraft or Returned Item (Insufficient Funds - NSF) fees incurred prior to conversion.

The Wells Fargo ExpressSend service is available online

With Wells Fargo Online, you can quickly send money back home using your existing ExpressSend service.
 - To get started, sign on to wellsfargo.com, select the "Transfer" tab and click "To Another Country" tab.
 - You'll obtain information about your transfer fees and the current foreign exchange rate before you submit a transfer.
 - Online transaction history makes it easy to monitor all your ExpressSend transfers.

There's no more waiting in teller lines.* Send money home today!

*The first remittance transfer for each ExpressSend service agreement must be completed in person at a Wells Fargo store. Cash-based remittance transfers can only be initiated at a Wells Fargo store.

2011 Wells Fargo Bank, N.A. All rights reserved. Member FDIC. Transferred funds are not FDIC insured. Transfers requiring foreign currency exchange are subject to the rate in effect at the time of the transaction. The to-account option or to-cash option may not be available at all Remittance Network Members.

Primary account number:   **1010295171063**   ■  August 6, 2011 - September 7, 2011   ■ Page 4 of 6



 IMPORTANT ACCOUNT INFORMATION

Now that you are receiving Wells Fargo Online Statements, the length of time you will be able to view inserts associated with your statements has changed. Online inserts can be viewed in your Online Banking session for 180 days and are located on the Statements & Documents page under the Important Documents section. You will be notified through an online email alert when a new insert is available. If you have any questions about viewing online inserts, please call the number on your statement to speak with a banker.

Welcome to Wells Fargo. Good news - you can continue to use your current Wachovia Check Card or ATM Card with your existing PIN. You'll receive a new Wells Fargo card before your current card expires.

Enjoy safe and secure savings with a Wells Fargo Time Account (CD). You will get a guaranteed rate of return and have the peace of mind of knowing your money is FDIC insured up to applicable limits. Talk with your Wells Fargo Banker today.

## Wells Fargo Way2Save ® Savings

### Activity summary

| | |
|---|---|
| Beginning balance on 8/6 | $13.76 |
| Deposits/Additions | 0.02 |
| Withdrawals/Subtractions | - 13.76 |
| **Ending balance on 9/7** | **$0.02** |

Account number:  **3000220852873**

**CHETAN KAPUR**

*New York account terms and conditions apply*

For Direct Deposit and Automatic Payments use
Routing Number (RTN):  026012881

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.02 |
| Average collected balance | $9.59 |
| Annual percentage yield earned | 2.33% |
| Interest earned this statement period | $0.02 |
| Interest paid this year | $0.13 |

Your account is eligible to earn a premium interest rate.
Your premium interest rate expires on      **9/8/2012** .

Primary account number:  **1010295171063**  ■  August 6, 2011 - September 7, 2011  ■  Page 5 of 6



## Transaction history

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|-------------|--------------------|--------------------------|---------------------|
| 8/30 | * Overdraft Protection to 1010295171063 | | 13.76 | 0.00 |
| 8/31 | Interest Payment | 0.02 | | 0.02 |
| **Ending balance on 9/7** | | | | **0.02** |
| **Totals** | | **$0.02** | **$13.76** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted.  If you had insufficient available funds when a transaction posted, fees may have been assessed.*

*   *Indicates transactions that count toward Federal Reserve Board Regulation D limits.  Please refer to your Account Agreement for complete details of the federally-mandated transaction limits for savings accounts.*

Primary account number:  **1010295171063**   ■ August 6, 2011 - September 7, 2011   ■ Page 6 of 6

## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance.  Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

[A]  **Enter the ending balance** on this statement.                $ |

[B]  **List outstanding deposits and other credits** to your account that do not appear on this statement.   **Enter the total** in the column to the right.

| Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total** | $ |

+ $ |

[C]  Add [A] and [B] to calculate the subtotal.        = $ |

[D]  **List outstanding checks, withdrawals, and other debits** to your account that do not appear on this statement.   **Enter the total** in the column to the right.

| Number/Description | Amount |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| **Total** | $ |

- $ |

[E]  Subtract [D] from [C] to calculate the adjusted ending balance.  This amount should be the same as the current balance shown in your register.

= $ |

## General statement policies for Wells Fargo Bank

- **To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts.**  You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Wells Fargo Servicing, P.O. Box 14415, Des Moines, IA 50306-3415.  Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation.  If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

- **In case of errors or questions about your electronic transfers,** telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  1. Tell us your name and account number (if any).
  2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
  3. Tell us the dollar amount of the suspected error.

  We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

- **In case of errors or questions about your Direct Deposit Advance service**

  If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at Wells Fargo Bank, P. O. Box 6995, Portland, OR 97228-6995 as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

  In your letter, give us the following information:

  1. Your name and account number
  2. The dollar amount of the suspected error
  3. Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

  You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

©2010 Wells Fargo Bank, N.A. All rights reserved NMLSR ID 399801       Member FDIC.



**12**