# FULL TAX RECORDS FROM 2003 TO 2013

# (ATTACHED/ REQUEST IT BE SEALED)

**13**



## Finances

**Chet K** <ckapur10@gmail.com>  Wed, May 27, 2015 at 3:56 PM
To: Manju Kapur <manjukapur2001@yahoo.com>

Will call you.

On Fri, May 1, 2015 at 2:07 AM, Manju Kapur <manjukapur2001@yahoo.com> wrote:
> Dear Chetan,
> Much as I would like to help you, I cannot anymore. I simply don't have the financial ability. Sorry.
>
> Love,
>
> Manju.

**14**

```
                                                                    110
     F5leschc
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2   BENJAMIN SCHWARZ, et al.,
 3
 3              Plaintiffs,
 4
 4        v.                              09 CV 9346(PAE)
 5
 5   THINKSTRATEGY CAPITAL
 6   MANAGEMENT, LLC, et al.,
 6
 7              Defendants.
 7   ------------------------------x
 8   SECURITIES AND EXCHANGE
 8   COMMISSION,
 9
 9              Plaintiff,
10
10        v.                              11 CV 8094(PAE)
11
11   CHETAN KAPUR, et al.,
12
12              Defendants.
13   ------------------------------x
13
14                                        May 21, 2015
15                                        9:35 a.m.
15
16
16   Before:
17
17                    HON. PAUL A. ENGELMAYER,
18
18                                        District Judge
19
19                         APPEARANCES
20
20   JASON SOLOTAROFF
21        Attorney for Plaintiffs
21
22   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
22        Attorneys for Plaintiffs
23   BY:  MICHAEL J. ROESSNER
23
24   CHETAN KAPUR, Pro Se
24
25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

F51eschc
111

1         (In open court)
2         THE COURT: Welcome back, counsel.
3         I'll note for the record that we have here the same
4  lawyers who were here yesterday. We have Mr. Roessner from the
5  SEC, Mr. Solotaroff and Mr. Kapur representing himself.
6         Where we left off yesterday, Mr. Kapur had given his
7  direct testimony as called by Mr. Roessner from the SEC.
8  Mr. Solotaroff had done a brief examination. And Mr. Kapur was
9  about to give his testimony on cross-examination; in effect,
10 his testimony on his own behalf.
11        So Mr. Kapur, let me call you back up to the witness
12 stand.
13  CHETAN KAPUR, resumed.
14 CROSS EXAMINATION
15        THE COURT: Mr. Kapur, I want to remind you that
16 you're still under oath. Do you understand that?
17        THE WITNESS: Yes, your Honor.
18        THE COURT: And I'll ask you today, please speak
19 slowly, loudly and distinctly. You have all the time you need.
20 But it can be sometimes a little bit hard to hear if you're
21 speaking softly or quickly. So take your time. Go nice and
22 slow.
23        THE WITNESS: Yes, your Honor.
24        THE COURT: And it would be my suggestion again to
25 you, so that all of us can understand clearly what it is you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F5leschc              Kapur - cross

```
 1   testifying about, to use topic sentences.  That will assist me
 2   in understanding as you go through each portion of what you
 3   intend to say, what it refers to.  Okay?
 4            THE WITNESS:  Yes, your Honor.
 5            THE COURT:  Are you ready to proceed?
 6            THE WITNESS:  Yes, your Honor.
 7            I just also wanted to -- this is the full Plaintiff's
 8   Exhibit 7.  Yesterday they submitted just a partial of
 9   Exhibit 7, and I was able this morning to print out one copy of
10   the full Exhibit 7, which would be helpful for everybody.
11            THE COURT:  You said Plaintiff's Exhibit 7, meaning
12   the SEC?
13            THE WITNESS:  SEC, yes.
14            THE COURT:  Let me see.  Have you shown this to both
15   of the lawyers this morning?
16            THE WITNESS:  Yes, your Honor.  I showed it to both.
17            THE COURT:  Mr. Roessner, have you seen Plaintiff's
18   Exhibit 7?
19            MR. ROESSNER:  Yes, your Honor.
20            THE COURT:  Mr. Solotaroff, have you?
21            MR. SOLOTAROFF:  Yes, Judge.
22            THE COURT:  All right.  Very good.  Thank you.  I will
23   substitute, then, in my binder the document you've handed up as
24   Plaintiff's Exhibit 7.  Thank you.
25            Mr. Kapur, with that, you may proceed.
```

F5leschc                    Kapur - cross

1           THE WITNESS:  Thank you, your Honor.
2           Your Honor, I would like to start the day by talking a
3   little bit about -- or demonstrating clearly and unmistakably
4   that payment towards the default judgment is impossible, or
5   compliance with the monetary sanctions is impossible, based on
6   my current financial status.  I'd like to start by talking
7   about how my company, ThinkStrategy Capital Management's funds
8   and resources got depleted completely from the middle of 2008
9   through to the middle of 2011.
10          During that period our fund was put into liquidation,
11  at which point we stopped receiving any fees from our core
12  fund.  And we paid for all the operating and infrastructure
13  costs of the fund and the firm.  Those costs for the fund and
14  the firm included audit expenses, accounting expenses,
15  administrator expenses, tax preparer expenses, legal expenses,
16  leverage structure expenses, salaries, rent, Telecom and
17  technology expenses, as well as research database expenses,
18  among others.  These expenses were paid by the firm at the
19  expense to the investment manager, with no reimbursement from
20  the fund, and depleted ThinkStrategy Capital Management's
21  resources and placed me personally in debt.
22          Your Honor, I submit Exhibit -- Defense Exhibit 9 as
23  part of this testimony, where --
24          THE COURT:  Sorry.  One moment.  Your binder goes up
25  through 8.

F5leschc                    Kapur - cross

1           THE WITNESS:  Then yesterday, your Honor, I submitted
2    Exhibit 9.
3           THE COURT:  Yes.  One moment.  Okay.  Very good.  I
4    have it.
5           THE WITNESS:  In Exhibit 9 it shows a benefit to
6    investor analysis that was prepared independently by my former
7    attorney.  It's been submitted prior on this case in this
8    matter.  And I resubmit it now again as part of this testimony.
9           THE COURT:  What was the context?  Just help me
10   understand.  What was the context in which this was prepared?
11          THE WITNESS:  Sure, your Honor.  This was prepared to
12   show -- it was a worst-case disgorgement scenario to be
13   presented to the Court, as was also presented to the SEC prior.
14   It accounted for in the worst-case scenario the fees of
15   ThinkStrategy Capital fund, any fees taken on funds that later
16   turned out to be bad, such as a FinVest and the Valhalla and
17   Victory funds.  And on the positive side as a benefit to
18   investors, it accounted for all the unreimbursed out-of-pocket
19   expenses for investors from 5/2008 to 4/30/2011.
20          THE COURT:  Before you proceed, let me just understand
21   a little bit about just the mechanics.  When was this document
22   created?
23          THE WITNESS:  This document was created in about
24   middle of 2011.
25          THE COURT:  And the purpose of this document was to

```
F5leschc                    Kapur - cross
 1   show that ThinkStrategy, the firm, did not have the money to
 2   pay the judgments that were then being sought by the SEC and
 3   the Schwarzes?
 4           THE WITNESS:  Yes, your Honor.
 5           THE COURT:  Go ahead.  Thank you.
 6           And it was created, sorry, by whom again?
 7           THE WITNESS:  It was created by Sandy Lieberman and
 8   Vivian Drohan.
 9           THE COURT:  Who is Mr. Lieberman?
10           THE WITNESS:  He was my attorney who was working along
11   with Vivian Drohan as part of finalizing a settlement with the
12   SEC at the time.
13           THE COURT:  Was he working at Ms. Drohan's law firm?
14           THE WITNESS:  No.  He had his own practice, and he was
15   more familiar with these matters than Ms. Drohan.  And so he
16   took charge in terms of independently preparing this, along
17   with Ms. Drohan.
18           THE COURT:  Go ahead.
19           THE WITNESS:  Thank you, your Honor.
20           In Section 3 it details with all backup all the
21   out-of-pocket expenses that one reimbursed to ThinkStrategy
22   Capital Management for the benefit of investors.  In Section 5
23   it notes all the discounts provided by ThinkStrategy Capital
24   Management to the multistrategy fund post January 2008.  And
25   then at the end, if you add up all the positives and benefits,
```

```
F5leschc                    Kapur - cross
 1              you get a net benefit to investors for very significant amount.
 2              I would note that -- and just qualify the fact --
 3                       THE COURT:  Show me where that is.  Where is the net
 4              benefit to investors reflected?
 5                       THE WITNESS:  Yes, your Honor.  If you would need to
 6              add up -- you would need to add up the numbers.  So in Section
 7              1 you have 2434 -- 049.  In Section 2 --
 8                       THE COURT:  243047.
 9                       THE WITNESS:  Sorry.  Correct.  243047.  The second
10              section you have 1654033.
11                       THE COURT:  Right.
12                       THE WITNESS:  And then the unreimbursed out-of-pocket
13              expenses are negative 2793 -- negative 2793697.48.
14                       THE COURT:  Right.
15                       THE WITNESS:  Then in section four, the expenses that
16              relate to the capital fund, as well as FinVest and Valhalla
17              come to negative 1094947.  And then in Section 5 the investor
18              discounts come to negative 1008939.60.
19                       THE COURT:  I take it the purpose, though, of this
20              presentation was in effect to show that net net, the investors
21              in the ThinkStrategy fund did better than was being portrayed?
22                       THE WITNESS:  Yes, your Honor.  It was showing that
23              the ThinkStrategy Capital Management, you know, with its
24              out-of-pocket expenses and discounts, provided a very, very
25              significant benefit over the fees that one could possibly claim
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F51eschc                    Kapur - cross

1    it didn't deserve to have.  Though one could also argue, based
2    on our offering memorandum, that we were entitled to management
3    and incentive fees and funds that later on went bad, as well as
4    a legal precedent cases -- I believe I was told by my former
5    attorney that even based on legal precedent cases, the
6    management fees would be entitled and allowable, you know, for
7    us to have taken, because we weren't aware of this fund being a
8    Ponzi.  That was only found out later on.  And then we wrote
9    the fund down immediately to zero.
10             THE COURT:  Thank you.  Go ahead.
11             THE WITNESS:  In spite of the fund having recoveries.
12   And so this is a benefit to investor analysis that I submit --
13   particularly, you know, for Section 3 and Section 5, to show
14   how the fund's resources were completely depleted, and as well
15   as to provide the discounts -- although these discounts, once
16   again, I qualify are only post January 2008.  It does not
17   factor in the discounts preJanuary 2008.
18             Having submitted that analysis, I'd like to move on to
19   note that any liquidator managing the fund at this point would
20   have charged all these expenses to the funds, which was a major
21   benefit to investors at the detriment of the investment
22   manager.  And during this period, during these three years,
23   while we were covering all operating and infrastructure costs
24   for the fund and the firm while receiving no fees, we provided
25   detailed reports to investors about the underlying investments.

              SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

```
                              Kapur - cross
     F5leschc
1    We answered all investor questions about what was going on with
2    underlying investments, the restructurings that were going on,
3    the suspensions that were going on and everything that was
4    generally going on in the markets impacting all the different
5    strategies --
6              THE COURT:  Slowly and loudly.
7              THE WITNESS:  As well as we tried to procure assets as
8    soon as feasible from the underlying subfunds.  We joined
9    investor committees and we appointed advisers to oversee
10   payouts from the underlying subfunds.  We coordinated with all
11   the service providers of the fund, the auditors, the
12   administrators, the tax preparers for the benefit of investors,
13   as well as we contacted each of the subfunds, as we regularly
14   used to, in terms of risk, in terms of the liquidity, in terms
15   of the outlook to get updates and relay these on to our
16   investors.  So we were providing full servicing to investors
17   while receiving no fees and depleting our resources and paying
18   for all the operating infrastructure costs that would otherwise
19   have been charged by any liquidator to the fund itself.
20             By the end of 2011, the fund's resources were
21   depleted.  I was in debt.  I did not have the resources even to
22   defend against the claims brought by the SEC.  My attorney at
23   the time had mentioned that it would be exorbitantly expensive
24   to defend against these claims.  And the resulting impact was
25   the fact that I had to agree to the terms of the settlement.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
F5leschc                   Kapur - cross
 1              In 2011, being in debt, I turned to my family for
 2    assistance towards the end of 2011.  Differing members of my
 3    family have loaned me funds since then.  Your Honor, I submit
 4    affidavits in Exhibit 3, 4 and 5, Defense Exhibits 3, 4 and 5
 5    to demonstrate the source of funds, as well as affidavits in
 6    other matters relating to this case.
 7              THE COURT:  One moment.  Very good.  Go ahead.
 8    To be clear, Exhibit 3 is from Manju Kapur?
 9              THE WITNESS:  Yes, your Honor.
10              THE COURT:  Who is that?
11              THE WITNESS:  Manju Kapur is my mother.  And she,
12    along with my father, supported by my oldest brother Karan
13    Kapur, provided me loans in the amount of 538,659.67 from
14    July 12, 2012, to date.
15              Your Honor, should I read these affidavits?
16              THE COURT:  No.  The affidavits are in evidence.  If
17    there's anything you want to elaborate on about them, you're
18    welcome to do so, but I've received -- and the parties have
19    agreed that they may be received -- I've received these in
20    evidence.  I just want to make sure I understand who the people
21    are.
22              So on Exhibit 3, Manju Kapur is your mother.
23              On Exhibit 4, the declarant is Bina Rai, who I've
24    previously received testimony from.
25              THE WITNESS:  Yes, your Honor.  She's my godmother.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

120

F5leschc                    Kapur - cross

1            THE COURT: She's your?
2            THE WITNESS: She's my godmother.
3            THE COURT: Right. And on Exhibit, 5 Kabir Kapur, who
4   is that?
5            THE WITNESS: He's my older brother, your Honor.
6            THE COURT: Thank you.
7            THE WITNESS: Thank you, your Honor.
8            So those affidavits are submitted to demonstrate the
9   source of funds. I would note that each of these family
10  members that have loaned me money have provided -- or Manju
11  Kapur, Karan Kapur, as well as Bina Rai, have provided the bank
12  statements to the SEC. And as per my understanding, those are
13  fully consistent with the loan agreements and their support.
14  In aggregate, my family provided me loans for my living and
15  legal expenses.
16           I submit Exhibit 2 as the loan contracts with
17  differing members of my family. It was detailed in terms of
18  the loans, as well as appendices, that have details on the
19  installments on each of the loans. I note, your Honor, the
20  loan agreement from Naveen and Manju Kapur with their terms and
21  majority dates; a loan between Manju Kapur and Bina Rai; a loan
22  agreement between Chetan Kapur and Bina Rai; and the loan
23  agreement between Chetan Kapur and Kabir Kapur.
24           THE COURT: One moment. So one between you and
25  Ms. Rai, I just want to make sure I've got that right. As I

                                                                    121
         F5leschc              Kapur - cross
1    look through Exhibit 2, the first document is an agreement
2    between you, on the one hand, and Manju Kapur and Naveen Kapur
3    on the other hand, and then it has an appendix.
4             The second document dated February 25, 2014, is
5    between Bina Rai and Manju Kapur, in which Manju Kapur is
6    loaning some $65,000 to Bina Rai.  Correct?
7             THE WITNESS:  Yes, your Honor.
8             THE COURT:  The third document is a loan agreement
9    dated September 10, 2011, between you and Bina Rai.  In the
10   middle of the document is an appendix, although it looks like
11   the appendix is out of order, because the appendix sheet right
12   now is appearing between paragraph seven and paragraph eight.
13            Am I correct that the appendix ought to be on the next
14   page?
15            THE WITNESS:  Yes, your Honor, you're absolutely
16   correct.
17            THE COURT:  And then the next document is an
18   installment loan agreement between you and Kabir Kapur dated
19   June 18, 2014, correct?
20            THE WITNESS:  That is correct, your Honor.
21            THE COURT:  Thank you.
22            THE WITNESS:  I submit these documents, your Honor, to
23   demonstrate in evidence the loans that were provided to me to
24   support my living expenses.
25            I will also note that since November of 2013 my family
                     SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300

```
          F5leschc              Kapur - cross
1    has refused to provide any moneys for any legal support to me.
2              THE COURT:  Since when?
3              THE WITNESS:  Since November of 2013.
4              THE COURT:  When you say your family, do you mean all
5    of the people I've just referred to?
6              THE WITNESS:  Yes, your Honor.
7              THE COURT:  So have you received any loans from
8    anybody since November 2013?
9              THE WITNESS:  Yes, I have, your Honor, but only for
10   personal expenses.  They've not supported any legal expenses.
11   And as noted to the Court prior, my family makes payment
12   directly to the vendors and wants to approve and understand all
13   charges before they provide these loans.
14             Moving forward, your Honor, it's also come to my
15   understanding relatively recently through discussion with
16   different members of my family is the reason they've been
17   refusing me -- refusing to pay both for legal and personal
18   expenses and have only been supporting my personal expenses
19   since November of 2013 is because they're financially unable to
20   support both legal and personal expenses, and have also noted
21   to me that they are currently having extreme difficulty
22   supporting my personal expenses as well.
23             THE COURT:  What are your current monthly personal
24   expenses?
25             THE WITNESS:  My rent and sundry expenses for
```

123

F5leschc                    Kapur - cross

1   transportation, food.
2           THE COURT:  What is the sum total of your monthly
3   living expenses?
4           THE WITNESS:  Varies from month to month, but around
5   5,000 to 6,000 approximately.
6           THE COURT:  And right now that is being provided by
7   your family?
8           THE WITNESS:  That's been provided by my family.  It's
9   specifically being provided by Manju Kapur and Naveen Kapur.
10  And if your Honor looks at the loan agreements in the appendix,
11  you'll note that they've been paying the rent with quite a
12  significant delay, as well as the credit card expenses with
13  quite a significant delay, right, since the end of 2014.  So
14  they have been having difficulty, you know, supporting the
15  personal expenses, just, you know, you can see from the delay
16  in which they are paying these expenses.
17          In the March 6 submission to the Court, which is
18  Defense Exhibit 1, I had submitted detailed ledgers of all my
19  living and other expenses, who paid those expenses, as well as
20  other details.  I submitted several hundred pages of financials
21  of credit card ledgers, of rental ledgers, and all of these
22  expenses are fully consistent with the loan agreements and the
23  loan contracts and the loan contract appendices that have been
24  provided by my family.
25          Your Honor, based on the above, I feel that it's clear

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300