171

F5leschc                           Kapur - redirect

1            THE WITNESS:  Page three, okay --
2            THE COURT:  Mr. Solotaroff, are you referring to the
3    page three as stamped by ECF or page three on bottom right-hand
4    corner of these e-mails?
5            MR. SOLOTAROFF:  Page three on the bottom right-hand
6    corner.
7            THE COURT:  Just for the record, we're now looking at
8    a document that, as filed on ECF, is document 50-2, and on ECF
9    it is page 5 of 81 of that document.  It so happens that the
10   document on the bottom right-hand corner bears the number page
11   3, but I'm giving you the ECF notification designation so that
12   there's no ambiguity about what's being referred to.
13           THE WITNESS:  I'm lost.
14           THE COURT:  At the end of this conference, by the way,
15   I'm going to direct that -- I think it's most reliable if I put
16   this on the SEC -- that all exhibits that have been referred to
17   or received in this hearing be put on the public docket of this
18   case.
19           Unfortunately, the way that this has proceeded, a
20   somewhat chaotic use of exhibits has been had.  And it will be
21   very hard to reconstruct what was being referred to.  And I
22   think, Mr. Roessner, I think you are in the position most
23   reliably to make sure that the ECF record of the case is
24   complete.
25           MR. ROESSNER:  Your Honor, that's not a problem.  The

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

172

F5leschc                    Kapur - redirect
1  only issue that I want to bring forward is the CHIPS document
2  we had yesterday, the additional CHIPS records that we
3  received, I'd like to redact those.
4           THE COURT:  I'm not discussing right now redactions.
5  I'm certainly open to proper redacting, if there is a
6  justification for it.
7           My point is that it doesn't appear that everybody has
8  put their records up on ECF.  Mr. Kapur perhaps understandably
9  is less facile with the technology, but I think, as we've seen
10 here, Mr. Solotaroff, with respect, larding on additions to
11 documents in court is no way to create a clear record of what
12 has been filed.  I'm going to ask that you coordinate with
13 Mr. Roessner, and that Mr. Roessner ultimately take
14 responsibility for making sure that the ECF record is clear and
15 distinct as to what each exhibit was.  Okay?
16           MR. SOLOTAROFF:  Yes.
17           THE COURT:  Go ahead, Mr. Solotaroff.
18           MR. SOLOTAROFF:  Judge, I'm just going to approach and
19 hand Mr. Kapur the relevant page of the document to refresh his
20 recollection, Judge.
21           THE COURT:  Yes.
22 BY MR. SOLOTAROFF:
23 Q.  Mr. Kapur, does that refresh your recollection that you
24 told MossFon that the source of the funds was your own savings
25 and earnings?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

173

F5leschc                          Kapur - redirect

1   A.  I was just talking --
2           THE COURT:  Mr. Kapur, it's a yes-or-no question.  Did
3   you represent that to MossFon?
4   A.  That my general source of funds were my savings, earnings
5   over the years from my past work experience and my businesses?
6   Q.  Yes.
7   A.  Correct.
8   Q.  Okay.  Now, what was the managed account platform, the
9   separate one that you launched, what was it called?
10  A.  Could you repeat the question?
11  Q.  Sure.  You testified that there was a managed account
12  platform that you launched.  What was it called?
13  A.  As part of AIM Advisory Group?
14  Q.  Yes.
15  A.  We were setting up a standardized structure called the
16  diversified strategy managed account platform.  So that was one
17  of the standardized products we were looking to launch.  And
18  other than that, we had a full managed account program within
19  the AIM entity.
20  Q.  And that was under the auspices of AIM Advisory Group?
21  A.  Correct.  That was the name of the company.
22  Q.  If you could turn to the testimony in the big binder on
23  July 9, 2014.  Turn to page 20.
24          Mr. Kapur, were you asked this question and did you
25  give this answer:

174

F5leschc                         Kapur - redirect
1    "Q  What's AIM Advisory Group, LLC?
2    "A  It's Bina Rai's art business."
3            Was that your testimony?
4    A.  That's correct.
5    Q.  And if you turn to the next page, page 21, line 20.  Do you
6    see that?
7    A.  That's correct.
8    Q.  Was this your testimony:  Where did AIM Advisory Group get
9    its start-up capital from?
10   "A  It was Ms. Rai's capital."
11           Do you see that?
12   A.  I do.
13   Q.  Now, I think one of the entities that you mentioned as a
14   private -- that was a managed account client was the Mangusta
15   group?
16   A.  Correct.
17   Q.  If you could turn back to page 11 --
18           THE COURT:  Of what?
19           MR. SOLOTAROFF:  Of same date, Judge.  Sorry.  July 9,
20   page 11.
21   Q.  Are you there, Mr. Kapur?
22   A.  Correct.
23   Q.  And that was testimony under oath before the Court, right?
24   A.  Page 11, all of it?
25   Q.  The whole thing.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

F5leschc                      Kapur - redirect

1   A.   Yes.
2   Q.   Were you asked this question and did you give this answer:
3   "Q   Well, what's that?
4   "A   I believe the Mangusta group was catered for."  Mangusta.
5   You spelled it.
6   "Q   Who were they?
7   "A   They are an institutional investor.
8   "Q   That invested in ThinkStrategy?
9   "A   In one of the funds, correct."
10          Was that your testimony?
11  A.   That is, yes.
12          MR. SOLOTAROFF:  I don't believe I have anything else,
13  Judge.  Let me just check.  Oh, yes, just a couple other
14  questions.
15  Q.   Mr. Kapur, when you had a managed account client, clients
16  that you say you had, what paperwork would be filled out in
17  connection with opening up a managed account for a client, with
18  the client?
19  A.   We would traditionally have a managed account agreement.
20  Q.   And have you looked for any of these managed account
21  agreements that should exist, if what you're telling us is
22  true?
23  A.   I haven't been asked to look for it, but I could look at
24  the files I have for it, sure.
25          THE COURT:  Do you believe you have such records?

176

F5leschc                    Kapur - redirect

1           THE WITNESS:  At this point, no, your Honor.
2           MR. SOLOTAROFF:  I don't have anything else, Judge.
3           THE COURT:  Mr. Kapur, you've heard some redirect
4    examination from both lawyers.  This now is your opportunity
5    for what's called recross-examination.  What that means is to
6    the extent that there are subjects that you would like to
7    address responsive to the topics that have just been taken up
8    by Mr. Roessner and Mr. Solotaroff, you're at liberty to give
9    testimony as to that.  Is there anything you would like to say
10   with respect to the questions or the topics that have just been
11   raised?
12          THE WITNESS:  Yes, your Honor.
13   RECROSS EXAMINATION
14          THE WITNESS:  Just to clarify a couple of things that
15   were implied by Mr. Solotaroff's questioning.  I believe
16   Mangusta was a managed account client, as well as a fund
17   investor.  They were one of the largest investors or larger
18   investors with our group.
19          In terms of the AIM Advisory Group company, that
20   company, once it wound down at the end of 2011, has an
21   investment management company.  It was then open and available
22   to be used for any purpose or any sort of business.  And
23   Ms. Rai used it as part of her art business structure.
24          THE COURT:  Anything further?
25          THE WITNESS:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

177

F5leschc                         Kapur - recross
1            THE COURT:  All right.  Mr. Roessner, do you have any
2    reredirect?
3            MR. ROESSNER:  No, your Honor.
4            THE COURT:  Mr. Solotaroff, do you have any
5    reredirect?
6            MR. SOLOTAROFF:  Just I'll ask one question.  I'll ask
7    it from here.
8    REDIRECT EXAMINATION
9    BY MR. SOLOTAROFF:
10   Q.  Mr. Kapur, have you reached out to the Mangusta group in
11   preparation for this hearing?
12   A.  I have not.
13           MR. SOLOTAROFF:  Nothing further, Judge.
14           THE COURT:  Okay.  Anything further from you,
15   Mr. Kapur?
16           THE WITNESS:  No, your Honor.
17           THE COURT:  You may step down.
18           (Witness excused)
19           THE COURT:  Your testimony, at least as called by the
20   SEC, is complete.
21           All right.  Mr. Roessner, you've now called three
22   witnesses and we've completed the examination of each.  We've
23   also received per stipulation all the exhibits in your binder.
24           Does the SEC have anything further at this hearing?
25           MR. ROESSNER:  No, your Honor.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

F5leschc                       Kapur - redirect
1              THE COURT:  Mr. Solotaroff, again, apart from what's
2    already been received, including by stipulation, do you have
3    anything?
4              MR. SOLOTAROFF:  No, Judge.
5              THE COURT:  Mr. Kapur, at this point the hearing
6    pivots to you.  Are there any witnesses you wish to call?
7              MR. KAPUR:  No, your Honor.
8              THE COURT:  Is there any additional testimony you wish
9    to give of your own?
10             MR. KAPUR:  No, your Honor.
11             THE COURT:  Are there any other exhibits you wish to
12   offer?
13             MR. KAPUR:  No, your Honor.
14             THE COURT:  So if I'm correct, no party has any
15   additional evidence they wish to offer at the hearing, correct?
16             MR. SOLOTAROFF:  Yes, Judge, that's correct.
17             MR. ROESSNER:  That's correct, your Honor.
18             THE COURT:  One moment.  (Pause)
19             Counsel, here I have a handful of things with respect
20   to next steps.  It would benefit me to receive post-hearing
21   briefs from all sides.  I'd like to make this expeditious, and
22   I think I can help focus you.
23             To my mind, the issue here really involves the third
24   of the Huber prongs:  The issue of whether the alleged
25   contemnor, here Mr. Kapur, has clearly established his

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

179

F5leschc                    Kapur - redirect

1    inability to comply with the terms of the order, in this case
2    meaning the final judgments in the SEC case, as well as the
3    Schwarz case.
4          I would welcome receiving -- and I'm going to set a
5    due date of next Friday, May the 29th -- briefs from each side
6    addressing that point.  For my benefit, I think it would be
7    useful if the parties could break out, if you will, in
8    categories the evidence that has been received, such that, for
9    example, it seems to me that there have been a number of topics
10   that have been ventilated here.
11         There appear to be account or accounts at Bank
12   Sarasin.  There appears to be an account at Bank Vontobel.
13   There's an engagement ring.  There is the Porsche, which may be
14   a reopened issue.  There are loans from family and friends.  It
15   would benefit me, rather than putting this all together
16   holistically, for you to break out in your discussion what the
17   evidence has shown as to each of the various points.  The
18   listing I just gave was not meant to be comprehensive.  I'm
19   just saying that from my point of view, there's a lot that has
20   been received.  And it will help me if you're able to break out
21   what the evidence has shown as to each of these particular
22   categories.
23         Mr. Kapur, I am mindful that you have been
24   representing yourself.  Once again, you are at liberty to have
25   the assistance of counsel.  I have found, as you know, that you

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

180
F5leschc                    Kapur - redirect
1  do not qualify for court appointed counsel here.  Just because
2  you appeared today without counsel doesn't mean that you have
3  waived your right to bring to bear counsel.  I encourage you to
4  seek out counsel to assist you.  It can only help you.
5          I also am mindful that in some of your testimony
6  yesterday and today you referred to the possibility of looking
7  for records of one sort or another.  You made reference to your
8  tax returns.  You also made reference to various accounts;
9  records, for example, relating to managed accounts.  I
10 understand that your testimony has been, as to at least records
11 of your business and records of the managed accounts, that you
12 are pessimistic that you could, in fact, find any of those
13 records.  But you've indicated you would like to look.
14         I'm going to ask you, if you have any records that are
15 responsive to any of the questions that have been asked, you
16 file those with the Court, with copies to your adversaries, by
17 next Wednesday, May the 27th.  That way, in the unlikely but
18 not impossible event that there are responsive records that you
19 have, counsel will be able to take account of them in their
20 filings due May 29th.
21         It definitely would benefit me, for what it's worth,
22 if you're able to produce copies of your tax returns going all
23 the way back really to the year 2000.  It seems to me that
24 inasmuch as an important issue here involves not so much assets
25 of the ThinkStrategy company's but of your own, you have not
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

F5leschc                          Kapur – redirect

1    come forward with any evidence with respect to your income
2    during the last number of years.  That is clearly at least a
3    relevant data point in reflecting on whether you have -- and
4    whether it's plausible that you don't have the assets to pay at
5    least some of the judgments here.
6             MR. KAPUR:  Just from one point, your Honor, on the
7    tax return, I believe that while I will submit a full set of
8    tax returns from the year 2000, I believe --
9             THE COURT:  2000 going forward.
10            MR. KAPUR:  2000 going forward.
11            THE COURT:  I don't mean just that year.  I'm saying
12   that I'm trying to get a longer sense of your income earning.
13   It may be that your tax returns don't fully report all your
14   income, but I'm assuming anything you do report on your tax
15   returns was at least accurate, insofar as if you reported
16   income, at least that much you did receive.  I am interested in
17   seeing going back to the year 2000 what income you reported.
18   It is relevant evidence to me in assessing your claim that you
19   have an inability to pay any of the judgments against you.
20            MR. KAPUR:  Yes, your Honor.  I would just note --
21            THE COURT:  You do have your own tax returns, right?
22            MR. KAPUR:  I do, but not going back all the way to
23   2000, your Honor.  I have them probably going back to 2003
24   or --
25            THE COURT:  Fine.  Whatever you have would benefit me
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

182

F5leschc                          Kapur - redirect
1    to have a copy of those.  I want you to make a copy, though,
2    for each of your adversaries, okay?
3            MR. KAPUR:  Yes, your Honor.  I would just note that
4    Exhibit 9 that I submitted has my tax returns I believe from
5    2004 on.
6            THE COURT:  Okay.  Very good.  Well, I'm not asking
7    you, then, to produce something that has already been produced.
8            MR. KAPUR:  I see.
9            THE COURT:  But, however, to the extent that it has
10   not been produced, I would be interested in receiving it.
11           All right.  Mr. Roessner, I will ask you to take
12   responsibility just for making sure that the public record of
13   the case, meaning what's on ECF, contains each of the exhibits.
14   It probably would make sense for this to be done in the
15   following way:  For you to have an attorney's declaration that
16   identifies using the exhibit numbers that were used here today,
17   each of the exhibits that at least to date is not yet up on
18   ECF.  That way there will be a very clear record, should anyone
19   need to review the ruling in this case, exactly what evidence,
20   what exhibit -- the documents that each exhibit correspond to.
21           I want to set a next inperson conference in this case,
22   and I want to do it here and now, so that there is no doubt
23   that everyone will be here.
24           The next conference in the case in person will be set
25   for July the 7th at 3:30 p.m.  That's a Tuesday.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

F5leschc                        Kapur - redirect
1              Mr. Kapur, you'll be able to attend that?
2              MR. KAPUR:  Yes, your Honor.
3              THE COURT:  Mr. Solotaroff?
4              MR. SOLOTAROFF:  Yes, Judge, I'm open that day.
5              THE COURT:  Mr. Roessner?
6              MR. ROESSNER:  Yes, your Honor.
7              THE COURT:  I expect all to be here that day.
8              Mr. Kapur, to the extent that you need to be contacted
9    by the Court or by counsel, I take it your e-mail address and
10   your residential address are unchanged; i.e., we can all
11   continue to reach you at those addresses?
12             MR. KAPUR:  Yes, your Honor.
13             THE COURT:  I expect that I will have a decision in
14   this case that issues in advance of the July 7th conference.
15   So keep a look out for it, Mr. Kapur.  We will obviously, if a
16   decision issues before then, get it to you both by e-mail, as
17   well as at your address, okay?
18             Are you on ECF, Mr. Kapur?
19             MR. KAPUR:  No, your Honor.  I did fill out a form and
20   the -- in the pro se office, but I haven't received anything
21   from ECF.
22             THE COURT:  I would encourage you to go to the pro se
23   office to find out why it is that you're not gaining access to
24   ECF.  It shouldn't be hard.
25             That said, the parties continue to be directed to make

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

184

```
     F5leschc                    Kapur - redirect
 1   sure that any ECF filings be sent to Mr. Kapur promptly by
 2   e-mail and by hard copy.
 3        Mr. Kapur, let me say one thing to you.  I am going to
 4   reserve judgment in this case until I receive the parties'
 5   post-hearing briefs, but I don't want to leave you with any
 6   misunderstanding about the following:  There is a very
 7   substantial chance that I will rule against you in this case.
 8   There is a very substantial chance that I will find you in
 9   contempt and find, therefore, that the sanction requested here
10   of incarceration by the SEC is merited as a means of compelling
11   you to disgorge the money that you are owed to the SEC.  I am
12   putting you on notice that there is a substantial likelihood of
13   that, based on what I have heard.  Again, I'm going to reflect
14   on the post-hearing briefs, but I think there is value in my
15   saying that to you now.
16        You have a very significant interest in paying the
17   judgments against you.  I understand that you have taken the
18   position in court that you have no money; that the various
19   evidence with respect to Swiss bank accounts and the like
20   references somebody else's money other than yours.  You've also
21   admitted as to the engagement ring that your family is holding
22   $92,000 in proceeds, or, rather, proceeds of the sale of that
23   ring.
24        Whatever the assets are, I'm saying the following to
25   you:  It is in your interest, whatever you have said in court
```

185

F5leschc                          Kapur - redirect

1    denying your access to that money, to start finding a way to
2    get that money together; because there is a very substantial
3    likelihood that I'm going to find against you and enter the
4    contempt sanction and put you in jail as a means of spurring
5    you to comply with the Court's outstanding orders.
6              I'm not seeking a comment from you now.  I'm just
7    simply putting you on notice, because I'm aware that it may
8    take some time for you to free up those moneys.  It is
9    significantly in your interest to start working on that now.
10             I'm not asking for a commentary.  Do you understand,
11   though, what I have said?
12             MR. KAPUR:  Yes, your Honor.
13             THE COURT:  Very good.  Is there anything further from
14   plaintiff?
15             MR. SOLOTAROFF:  Yes, Judge.  Two things.  One, given
16   what the Court just said, I would ask that the Court order
17   Mr. Kapur to surrender his passport to the Court or to pretrial
18   services or some court entity that would be appropriate.
19             THE COURT:  Mr. Kapur, where is your passport?
20             MR. KAPUR:  At my residence, your Honor.
21             THE COURT:  Where?
22             MR. KAPUR:  At home.
23             THE COURT:  I'm going to ask you tomorrow to bring in
24   your passport and to supply it to my chambers.
25             One moment.  Ms. Hummel?  (Pause)
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

F5leschc                    Kapur - redirect
1            Mr. Kapur, you are to bring your passport and any
2       other travel documents to the Court tomorrow.  There will be my
3       law clerks in chambers to receive it.  But I think
4       Mr. Solotaroff's point is well taken, that I don't want you to
5       feel the temptation to avoid the authority or attempt to avoid
6       the authority of this Court by using your travel documents to
7       leave the country.
8            I see you shaking your head, and I understand you are
9       representing that, of course, you wouldn't do so.  But I have
10      seen others succumb to that temptation under similar
11      circumstances.
12           Do you understand?
13           MR. KAPUR:  Yes, your Honor.
14           THE COURT:  By noon tomorrow, please bring your
15      passport and any travel documents to my chambers.  We will hold
16      them for safekeeping.
17           Thank you, Mr. Solotaroff.  Good suggestion.
18           MR. SOLOTAROFF:  And one housekeeping suggestion is
19      that just so that -- Mr. Kapur may not understand this.  He
20      probably needs to call your chambers from downstairs, because
21      certainly the marshals are not going to let him --
22           THE COURT:  That's correct.  Mr. Kapur, when you
23      arrive in this building, explain that you need to contact my
24      chambers.  One of my law clerks will be able to come down and
25      retrieve the passport from you at security.

187

F5leschc                    Kapur - redirect

1          MR. SOLOTAROFF:   Secondly, Judge, I also ask that you
2    order Mr. Kapur to not apply for another passport prior to the
3    hearing on July 7th, and that your Honor make that order in a
4    way that the SEC and I can send the order to the passport
5    authorities so that they understand that.
6          THE COURT:   Yes.  I will issue a written order today
7    that recites the fact that we have directed Mr. Kapur to
8    provide his passport to my chambers for safekeeping by noon
9    tomorrow, and that Mr. Kapur is directed not to seek to apply
10   for a passport or other international travel documents, pending
11   the Court's hearing on July the 7th.
12         MR. SOLOTAROFF:   And then finally, Judge, I would just
13   like the opportunity -- and I'm not sure I'm going to make use
14   of it, but if either the SEC or the Schwarzes want to submit
15   our own additional documents, that we also have the opportunity
16   to do it by, I guess, the 27th.
17         THE COURT:   Mr. Solotaroff, the record of the
18   conference is closed.  The hearing is closed.  Mr. Kapur made
19   reference in response to your examination questions and that of
20   Mr. Roessner to the possibility that he has some documents that
21   are responsive to your questions.  He is pro se, and I think it
22   is the right outcome for him to have the opportunity to look
23   for those documents.
24         In the event that those documents unexpectedly both
25   are produced and prompt the need to reopen the hearing, you're

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

188
F5leschc                    Kapur - redirect

1    at liberty to try that.  But you're an admitted attorney.  The
2    time for you to present evidence on this is over, unless there
3    is some issue that is fairly opened by the documents that
4    Mr. Kapur may present.
5            Is there something specific you have in mind?  We have
6    to stop this eventually.
7            MR. SOLOTAROFF:  The only specific thing was -- and I
8    think they've been even submitted before, but there are
9    ThinkStrategy audit reports which show the fees that the
10   capital management company earned over the years.  I would
11   think that that would be --
12           THE COURT:  Is that part of the trial record from the
13   ThinkStrategy, from the Schwarz trial?
14           MR. SOLOTAROFF:  It might be, Judge.
15           THE COURT:  If it's part of that record, that's fine.
16   Then it's already within the scope of the record of the case.
17           But there was an opportunity to present evidence.  I
18   think the time has passed, unless it is fairly responsive to a
19   door opened by Mr. Kapur's post-hearing evidence.
20           MR. SOLOTAROFF:  That's fine, Judge.
21           THE COURT:  Anything further from you, Mr. Solotaroff?
22           MR. SOLOTAROFF:  No, Judge.
23           THE COURT:  Anything from you, Mr. Roessner?
24           MR. ROESSNER:  The only point is that Exhibit 7, the
25   new expanded version, if I can just get a copy of that.  And I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300