189

F5leschc                          Kapur - redirect

1   will then upload that tomorrow with my declaration and the
2   joint stipulation that the parties agreed to.  So I'll put the
3   joint stipulation and then everything behind that.
4           THE COURT:  Very good.  And Ms. Hummel is giving you
5   back Exhibit 7 as it was presented to me today.
6           MR. ROESSNER:  I will Fed Ex this back to the Court
7   after I make a scan of it.
8           THE COURT:  That works for me.
9           Anything, with that, further from you, Mr. Roessner?
10          MR. ROESSNER:  No, your Honor.
11          THE COURT:  Anything from you, Mr. Kapur?
12          MR. KAPUR:  No, your Honor.
13          THE COURT:  I thank you, and I look forward to seeing
14  you all on July 7th and to receiving post-hearing briefs a week
15  from Friday.
16          We stand adjourned.
17          (Adjourned)
18
19
20
21
22
23
24
25

                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

190

```
 1                    INDEX OF EXAMINATION
 2    Examination of:                            Page
 3    CHETAN KAPUR                                111
 4    Cross  . . . . . . . . . . . . . . . . . 111
 5    Redirect By Mr. Roessner . . . . . . . . . 146
 6    Redirect By Mr. Solotaroff . . . . . . . . 152
 7    Recross  . . . . . . . . . . . . . . . . 176
 8    Redirect By Mr. Solotaroff . . . . . . . . 177
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**15**

```
                                                        1
     F5keschc
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2    BENJAMIN SCHWARZ, et al.,
3
3                 Plaintiffs,
4
4            v.                      09 CV 9346(PAE)
5
5    THINKSTRATEGY CAPITAL
6    MANAGEMENT, LLC, et al.,
6
7                 Defendants.
7    ------------------------------x
8    SECURITIES AND EXCHANGE
8    COMMISSION,
9
9                 Plaintiff,
10
10           v.                      11 CV 8094(PAE)
11
11   CHETAN KAPUR, et al.,
12
12                Defendants.
13   ------------------------------x
13
14                                   May 20, 2015
15                                   1:50 p.m.
15
16
16   Before:
17
17                 HON. PAUL A. ENGELMAYER,
18
18                                      District Judge
19
19                      APPEARANCES
20
20   JASON SOLOTAROFF
21       Attorney for Plaintiffs
21
22   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
22       Attorneys for Plaintiffs
23   BY:  MICHAEL J. ROESSNER
23
24   CHETAN KAPUR, Pro Se
24
25
```

```
                                                        2
     F5keschc
1              (Case called)
2              THE DEPUTY CLERK:  Counsel for Benjamin Schwarz,
3    please rise and state your name, sir.
4              MR. SOLOTAROFF:  Good afternoon, Judge.  Jason
5    Solotaroff for the Schwarz plaintiffs.  In the courtroom in the
6    first row is Daniel Schwarz.
7              THE COURT:  Very good.  Good afternoon to you,
8    Mr. Solotaroff.
9              Good afternoon to you, Mr. Schwarz.
10             THE DEPUTY CLERK:  Counsel for the SEC?
11             MR. ROESSNER:  Michael Roessner on behalf of the
12   United States Securities and Exchange Commission.
13             THE COURT:  Very good.  Good afternoon to you,
14   Mr. Roessner.
15             MR. KAPUR:  Chetan Kapur for ThinkStrategy Capital
16   Management and for Chetan Kapur.  And, your Honor, Mr. Joseph
17   Romano, my accountant, is here.
18             THE COURT:  Good afternoon to you, Mr. Romano.
19             And good afternoon to you, Mr. Kapur.
20             Mr. Kapur, I'll note that you are not accompanied
21   today by counsel, is that correct?
22             MR. KAPUR:  That is correct, your Honor.
23             THE COURT:  You've brought a CPA but not counsel, is
24   that correct?
25             MR. KAPUR:  Yes, your Honor.  He's a witness.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

3

F5keschc

```
 1              THE COURT:  Okay.  Very good.  Just to be clear, and I
 2     know I've said this to you before, you are at liberty to be
 3     represented by counsel.  The pro se department of this court
 4     and I have independently determined that you do not qualify for
 5     the appointment of counsel, but I encourage you to bring
 6     counsel.  I have in the past, I encourage it today, and to the
 7     extent the hearing continues, I encourage you to be represented
 8     by counsel.  It is your right.
 9              You understand?
10              MR. KAPUR:  Yes, your Honor.  I just don't have the
11     ability to pay for counsel.
12              THE COURT:  Well, whether or not you have the ability
13     to pay for counsel is very much wrapped up in the merits issues
14     that we'll be discussing here today.
15              But on the basis of the considerable record that has
16     been presented to me, I reject the proposition that you don't
17     have the ability to pay for counsel.  Every indication is you
18     have substantial means at your disposal and have very
19     substantial monthly expenses.  In any event, I want to make it
20     clear that I welcome and invite you to bring counsel.
21              All right.  With that, the purpose of this hearing is
22     to consider the application by the Schwarz plaintiffs and the
23     SEC to hold Mr. Kapur in contempt.  Let me, first of all, set
24     out what the relevant standards are.  And I'm citing here the
25     Second Circuit's decision in Huber v. Marine Midland Bank,
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

F5keschc
1  51 F.3d 5 at page 10, (2d Cir. 1995).  The circuit has stated,
2  and I quote, "in order to hold the alleged contemnor in
3  contempt, the Court need only, one, have entered a clear,
4  unambiguous order; two, find it established by clear and
5  convincing evidence that the order was not complied with; and
6  three, find that the alleged contemnor has not clearly
7  established his inability to comply with the terms of the
8  order."
9         I will, of course, receive evidence on all three of
10  those points at this hearing, but it seems to me that the heart
11  of the matter here is on the third element.  The Court here
12  has, in both of these cases, issued what I regard as a clear
13  order.  In the Schwarz case, the final judgment entered on
14  June 1, 2012, and the amended judgment issued on September 21,
15  2012, award to the Schwarz plaintiffs $4,836,473.  That
16  includes prejudgment interest.
17         And in the SEC case, the final judgment was issued on
18  November 30, 2012, with an amended judgment issued on
19  January 3, 2013.  And that judgment awards to the SEC the sum
20  of $3,988,196.59 in disgorgement and prejudgment interest.  It
21  appears to be undisputed Mr. Kapur has not complied with either
22  of those orders, insofar as he has not made any payments toward
23  them.
24         So it appears to me, in any event, that the really
25  disputed issue here will be whether or not he has clearly
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5

F5keschc

1   established his inability to comply with the terms of those
2   orders.
3           In terms of the relief that each party is seeking, I
4   note that the parties appear to be seeking different, although
5   not inconsistent, relief.  The SEC is asking that Mr. Kapur be
6   incarcerated until he pays the outstanding judgment in favor of
7   the SEC to the SEC.  The Schwarz plaintiffs are seeking
8   incarceration until Mr. Kapur, quote, provides complete and
9   truthful testimony about offshore accounts in Switzerland and
10  elsewhere.
11          Mr. Solotaroff, just briefly, for now I noted that
12  your submission does not appear to be seeking contempt for
13  failure to pay the judgment.  It wasn't clear to me whether
14  you're taking the position that the Court lacks authority to do
15  that in the context of a civil money judgment as opposed to a
16  disgorgement order, or it's simply not what you're seeking.
17  I'd welcome your clarification and any law that speaks to the
18  point.
19          MR. SOLOTAROFF:  Judge, well, first of all, before we
20  even get into that, Judge, I want to just note for the record
21  that when Mr. Kapur stated his appearance, he stated that he
22  was here representing -- for ThinkStrategy Capital Management
23  as well.  And I think, as your Honor well knows, he can't do
24  that.
25          THE COURT:  I know that, but -- yes, Mr. Solotaroff,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

6

F5keschc

1    you're quite correct that an individual pro se cannot represent
2    a corporate entity.
3            But the contempt hearing is, as I understand it,
4    directed solely at Mr. Kapur, correct?
5            MR. SOLOTAROFF:  It is, Judge.  I just didn't want
6    there to be a problem later.
7            Yes, Judge, as I said in my prehearing brief, I
8    thought that perhaps the contempt power of the Court was
9    available to compel Mr. Kapur to pay the judgment, but it turns
10   out that I think the law is against that proposition.  So,
11   especially given the SEC's application, I don't think that we
12   really need to try to make new law on that or distinguish the
13   point.
14           So what I'm seeking, Judge, is truthful testimony on
15   the offshore accounts.
16           THE COURT:  Well, let me be clear.  It's not by any
17   means clear to me that it is correct that I would lack the
18   power to incarcerate Mr. Kapur until he complied with a civil
19   money judgment.  But I don't need to address the issue, since
20   that's not what you are seeking.
21           I do want to clarify, though, what it is you are
22   asking.  Are you asking that he provide complete and truthful
23   testimony about the offshore accounts in Switzerland?  Are you
24   asking that he provide current account statements for those
25   accounts or current and historical account statements?  I need

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

7

```
        F5keschc
1   a little more clarity, because your application is less
2   specific than the SEC's as to what it is you're seeking.
3           MR. SOLOTAROFF:  Yes, Judge.  And that's really a
4   function of what's happened up to now in this case, in that it
5   probably could have been done differently, but I have not come
6   to the Court on multiple occasions and asked for orders to
7   compel Mr. Kapur to produce documents and so on.
8           What I have asked the Court to do, which I did last
9   year, was ask the Court to require Mr. Kapur to testify about
10  the 2007 Bank Sarasin transfer.  The Court issued an order --
11  and in my brief, I think that it would be helpful if the Court
12  perhaps clarified this before Mr. Kapur took the stand.  The
13  Court basically required Mr. Kapur to appear at a hearing at
14  which he would be questioned about that issue.
15          Now, I think implicit in that is that Mr. Kapur is
16  required to testify about it and testify truthfully.  But I
17  would hate to be up in the circuit and have the appeals court
18  saying, well, it wasn't clear enough.
19          THE COURT:  I'm asking you what you are seeking,
20  Mr. Solotaroff.
21          MR. SOLOTAROFF:  What I want your Honor to do is to
22  clarify your previous order and instruct Mr. Kapur, who is here
23  today, that he is required to testify truthfully about the 2007
24  Sarasin transfer and a related topic, which is his offshore --
25  any offshore accounts.
```

SOUTHERN DISTRICT REPORTERS, P.C.<br>
(212) 805-0300

8

F5keschc

1         THE COURT:  Are you seeking production from him of
2  records of those accounts?
3         MR. SOLOTAROFF:  Not at this time.
4         THE COURT:  So you're simply asking that he provide
5  truthful testimony about the 2007 transfer?
6         MR. SOLOTAROFF:  And any other offshore accounts that
7  he might have.
8         THE COURT:  Okay.  And as long as Mr. Kapur gives
9  truthful testimony on that point, you are not seeking a
10  contempt sanction?
11         MR. SOLOTAROFF:  That's right, Judge.
12         THE COURT:  Okay.  It seems to me, then, that the
13  relief that you and the SEC are seeking are quite different.
14  But be that as it may, I do think it appropriate that Mr. Kapur
15  testify about that transaction.  It certainly raises
16  substantial questions about his access to funds to pay either
17  of these judgments.
18         I expect you're at liberty to call Mr. Kapur when your
19  case is on, which may be today or may be tomorrow, depending on
20  how fast the SEC goes.
21         Let me ask the following question:  What is the
22  relationship between the judgments in the Schwarz case and the
23  SEC case?  Right now the SEC is asking that Mr. Kapur be
24  incarcerated until he pays the outstanding SEC judgment against
25  him, unless Mr. Kapur can clearly establish his inability to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

F5keschc

1   pay that judgment.  Let us suppose, Mr. Roessner, that
2   Mr. Kapur were to pay the 3.9-plus million-dollar judgment that
3   runs in favor of the SEC.  Where will that money go?
4           MR. ROESSNER:  The commission would -- we have an
5   office of distributions, and they would then create a
6   distribution plan.  They would determine all the victims and
7   make distributions to those victims.  There's been any number
8   of other -- we've done it in different cases.  In other cases,
9   for example, that's a typical way we would do it.
10          THE COURT:  Right.
11          MR. ROESSNER:  Here we have a victim that has brought
12  their own suit.  They have their own judgment.  And I'd have to
13  get --
14          THE COURT:  Keep your voice up.
15          MR. ROESSNER:  Sorry.  I'd have to get approval from
16  the commission to deviate from that pattern, but if Mr. Kapur
17  paid $4 million to Mr. Schwarz, we could seek to have that
18  credit applied to the SEC judgment.  That's another
19  possibility.
20          THE COURT:  Well, I guess the question is, if you are
21  the one who is seeking that contempt, that incarceration be
22  ordered until the money is paid.
23          Let's suppose you succeed in that endeavor.  Let's
24  suppose that you establish the three elements set out in Huber,
25  and that Mr. Kapur at that point pays up, or at some point
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

10

F5keschc
1    after the period of incarceration begins, pays up and gives you
2    to the penny the amount of the judgment in favor of the SEC.
3    I'm trying to understand what the relationship is then between
4    that and the Schwarz judgment.
5              I mean, I gather you have in mind to begin with, it
6    wouldn't fully discharge the Schwarz judgment.  But
7    Mr. Solotaroff is not asking Mr. Kapur be incarcerated until
8    that judgment is paid off.  What would you do with the 3.9-plus
9    million dollars?  Would all of it go to the Schwarzes?  Would
10   it go on a pro rata basis to the Schwarzes and the other people
11   whom the SEC has determined to be victims?
12             MR. ROESSNER:  Typically that's how the SEC would do a
13   distribution.  Our --
14             THE COURT:  Pro rata?
15             MR. ROESSNER:  Yes.  We would have all the victims --
16   they do a claims process.  And the Courts probably have done
17   this in other cases with the commission.  We would have -- all
18   the victims would have to submit a claim showing what their
19   losses were, make sure that these are legitimate claims.  And
20   like the Madoff case, where they had to go through and
21   determine who won, who lost, all that sort of thing.  This is
22   outside of my office, though.  They're down the hall from me.
23   They would determine who the victims are, and then they'd come
24   to you to approve this distribution, hopefully very quickly.
25             THE COURT:  So depending on the proportion of the
                      SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

11
F5keschc
1    claims, the bona fide claims that you receive, that is made up
2    of the Schwarz claims, that presumably would help determine
3    what share of the 3.9-plus million dollars is properly
4    allocable to the Schwarzes?
5              MR. ROESSNER:  That's right.
6              THE COURT:  Thank you.  That's very helpful.
7              Here's how I'd like to proceed today.  First of all,
8    I've helpfully received a binder from each of the three parties
9    here.  Mr. Solotaroff provided a binder of relevant materials
10   prior to our last hearing.  And then in advance of this
11   hearing, I received, first, a binder from the SEC, and then one
12   from Mr. Kapur.
13             Strictly speaking, although it appears that only the
14   third element is seriously in dispute, I think it the better
15   course to require each of the two plaintiffs here to go first
16   and, in effect, prove up their cases.
17             So I'm going to call on the SEC first to bring its
18   case; in effect, offer its evidence.  To the extent there are
19   live witnesses called, Mr. Solotaroff, you would have an
20   opportunity, if there's anything to add, to question those
21   witnesses.
22             And of course, Mr. Kapur, you would as well.
23             After the SEC goes, I will then call on Mr. Solotaroff
24   on behalf of the Schwarz family to present its case.  And then
25   I will, providing that the first two elements have been
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

12

F5keschc
1    established, give Mr. Kapur an opportunity then to present his
2    case, which I'm assuming will largely focus on the third
3    element, particularly with Mr. Kapur having an accountant here,
4    okay?
5              MR. ROESSNER:  I'll go to the podium.
6              THE COURT:  Pardon me?
7              MR. ROESSNER:  I'm going to go to the podium.
8              THE COURT:  Before you do, let me ask you,
9    Mr. Roessner, inasmuch as you going first, can you give me a
10   preview of what your case will consist of?
11             MR. ROESSNER:  Yes, I can.  And I have a couple of
12   housekeeping items as well.
13             First, I just want to express regret for the
14   commission's failure to appear at the April 30th hearing.
15   There was a misunderstanding on the purpose of the hearing, and
16   I want to make sure the Court understands that in no way
17   reflects the urgency with which the commission takes this
18   matter.  Given the request and the remedy of our incarceration
19   we're seeking here, I wanted to state that up front.
20             THE COURT:  Thank you.  I appreciate that.  In
21   fairness, my order did not require that the SEC attend,
22   although I believe I encouraged it.  So you are not in
23   violation of any order, but I'm glad you're here.  And I very
24   much appreciated the helpful binder you prepared.
25             MR. ROESSNER:  Now, to preview what we intend to do
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

13

F5keschc

1  today, we have two live witnesses -- three live witnesses,
2  actually.  First witness will be Brad Mroski, M-R-O-S-K-I.
3  He's an assistant chief accountant for the commission.  He's in
4  the courtroom to the right.
5          THE COURT:  Okay.
6          MR. ROESSNER:  My right.  He's going to testify
7  regarding the CHIPS data that we have provided in our binder,
8  Exhibit 20, and hopefully follow the flow of money from a Bank
9  Vontobel to Bina Rai's account.  We talked about this in our
10  reply brief.
11          We also have Joseph Romano.  He's in the courtroom.
12  He was Mr. Kapur's CPA.  And he is the individual that signed a
13  reference letter for Mr. Kapur to an entity called Mossack
14  Fonseca, or MossFon, and he's going to testify also regarding
15  Bina Rai.  He prepared her tax returns.
16          We're also going to put Mr. Kapur on, hopefully
17  briefly, as an adverse witness and ask specific questions to
18  elicit information regarding his ability to pay.  That might
19  come later on, given what the Court just mentioned.
20          THE COURT:  I mean, I'm happy for you to call him on
21  your case.  I mean, I think that that's perfectly fine for you
22  to do so.  But Mr. Kapur will obviously have the opportunity to
23  call himself or some other witness, even if that witness has
24  already been called on your case, on his own case.
25          MR. ROESSNER:  One point I want to make regarding

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

F5keschc
1   Mr. Kapur telling the truth or not telling the truth.  The
2   Court laid out the standard in Huber.  The commission does not
3   need to show that Mr. Kapur lied or wasn't telling the truth or
4   anything like that.  However, if the Court finds that Mr. Kapur
5   was not being truthful regarding his inability to pay, then he
6   cannot possibly meet his standard under Huber.  That would be
7   the commission's position.
8           What I'd like to do, and I think this is going to
9   shortcut things just a little bit, given the Court's -- how you
10  laid things out, the parties have entered into a joint
11  stipulation of facts and admissibility of the evidence.  I'd
12  like, if I could, to offer that to the judge.  Unfortunately,
13  we only have one copy because we just had it signed today.  If
14  I could offer that up.  It's all 30 of the commission's
15  exhibits.  It is one exhibit for Mr. Solotaroff.  And Mr. Kapur
16  has nine exhibits.
17          So we've stipulated to the admissibility of all of
18  these exhibits.  And there's also three facts that are
19  stipulated to, which are two of the Huber facts, which is that
20  the Court entered a judgment and that Mr. Kapur has not paid,
21  and he had notice of it.  So that meets the commission's burden
22  of the stipulation.
23          THE COURT:  May I see the stipulation.
24          MR. ROESSNER:  And with that --
25          THE COURT:  One moment.  Let me just read the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300