```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BENJAMIN SCHWARZ, ET AL.,

            Plaintiffs,
                                        09 CV 9346 (PAE)
         v.                             11 CV 8094 (PAE)
                                        12 CV 5818 (PAE)
THINKSTRATEGY CAPITAL
MANAGEMENT LLC, ET AL,

            Defendants.
------------------------------x
                                        New York, N.Y.
                                        May 9, 2017
                                        1:08 p.m.

Before:

                HON. PAUL A. ENGELMAYER,

                                        District Judge

                       APPEARANCES

GISKAN, SOLOTAROFF & ANDERSON & STEWART, LLP
     Attorneys for Schwarz Plaintiffs
BY:  JASON SOLOTAROFF

U.S. SECURITIES AND EXCHANGE COMMISSION
     Attorneys for SEC Plaintiff
BY:  MICHAEL J. ROESSNER
     MARSHA C. MASSEY

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP
     Attorneys for Schneider Plaintiffs
BY:  JONATHAN HARRIS


CREIZMAN PLLC
     Attorneys for the Defendants
BY:  ERIC M. CREIZMAN
```

1           (In open court)

2           (Case called)

3           MR. SOLOTAROFF:  For the Schwarz plaintiffs, Jason Solotaroff.

5           THE COURT:  Good afternoon, Mr. Solotaroff.

6           MS. MASSEY:  Good afternoon, Judge.  Marsha Massey on behalf of the Securities and Exchange Commission.

8           THE COURT:  Good afternoon.

9           MR. ROESSNER:  Mike Roessner for the SEC.

10          THE COURT:  Good afternoon.

11          MR. HARRIS:  Good afternoon, your Honor.  Jonathan Harris, Harris, O'Brien & Chaudhry, for the Schneider plaintiffs.

14          THE COURT:  All right.  Good afternoon.

15          MR. CREIZMAN:  Good afternoon, your Honor.  Eric Creizman, and with me is Chetan Kapur.

17          THE COURT:  Good afternoon to you, and good afternoon to you, Mr. Kapur.  You may all be seated.

19          I have received the submissions from the SEC, and I've received the submissions from Mr. Kapur.  Just for the record, has anyone else made any written submissions in this matter?

22          MR. SOLOTAROFF:  No, Judge.  The Schwarz plaintiffs join in the SEC.

24          THE COURT:  I assumed as much.  Thank you.

25          MR. HARRIS:  Your Honor, the same for the Schneider

1  plaintiffs.

2  THE COURT: Since the last submission I received, has
3  there been any factual developments? Is there anything else to
4  bring to my attention? That would be no. Okay. In that case,
5  I have a ruling to read from the bench.

6  I am now going to issue a ruling addressing
7  Mr. Creizman's motion made on Chetan Kapur's behalf to lift the
8  finding of contempt against Mr. Kapur and discharge him from
9  detention. For your planning purposes, I do not intend to
10 issue a written decision. There will simply be a bottom-line
11 order of the issues that incorporates by reference the Court's
12 opinion from the bench, this opinion. Therefore, if the
13 content of what I say is significant to counsel, you will need
14 to obtain the transcript.

15 I am going to begin by recapping the key facts. On
16 July 1st, 2015, the Court held defendant Chetan Kapur in civil
17 contempt for failure to pay money towards the multi-million
18 dollar judgments the Court had entered against him in two civil
19 cases. One case was brought by the Securities and Exchange
20 Commission entitled *Securities and Exchange Commission v.*
21 *Chetan Kapur and Lilaboc LLC*, 11 CV 8094 (PAE). There, the
22 consent judgment against Mr. Kapur is for $4,988,196.59, which
23 consists of disgorgement, civil penalties and pre-judgment
24 interest.

25 The other case was brought by plaintiff investors, who

are members of the Schwarz family, *Benjamin Schwarz, Christina Schwarz and Daniel Schwarz v. Thinkstrategy Capital Management LLC and Chetan Kapur*, 09 CV 9346 (PAE). The judgment there was obtained after a civil bench trial. It is for $4,836,473, which includes pre-judgment interest.

In its July 1, 2015, decision, which is docketed in the SEC case, 11 CV 8094 at docket 68, the Court reviewed at length the evidence of Mr. Kapur's access to funds. That evidence had been developed after a several-day contempt hearing and included voluminous evidence adduced by the SEC.

The Court held that Kapur had not proven his inability to pay money towards the two judgments. On the contrary, the Court held the SEC had identified several categories of assets that appeared available to Mr. Kapur, and Mr. Kapur had been given ample opportunities to pay the judgments but had continued to skirt them, while using money made available to him for his personal benefit.

As a meanings of coercing Mr. Kapur to pay towards the judgments, the Court ordered Mr. Kapur incarcerated until he either purged the contempt, by repatriating assets towards the judgments, or established that compliance was not possible. The sanction took effect, and Mr. Kapur surrendered to the United States marshals on July 7th, 2015.

As of Sunday, May 7, 2017, Mr. Kapur has been incarcerated for 22 months, pursuant to the Court's civil

1   contempt order.  Over that period, the Court has held numerous
2   conferences with counsel and Mr. Kapur.  At each conference,
3   the Court has reviewed with counsel the facts relating to the
4   assets ostensibly available to Mr. Kapur.  Further facts have
5   been adduced as to various categories of assets, and at each
6   conference, the Court has assessed whether the contempt
7   sanction of incarceration continued to be justified.  Each
8   time, the Court found that it was.
9         Over the course of these conferences, the Court has
10  received helpful guidance from counsel for the judgment
11  creditors.  For the SEC, that is Mr. Roessner, and for the
12  Schwarz plaintiffs, that was Mr. Solataroff.  The Court has
13  also benefited from the appearance and the able work of counsel
14  for Mr. Kapur.
15        Mr. Kapur had originally been pro se, including at the
16  time of the evidentiary hearing that led to the contempt
17  sanction.  Mr. Kapur came to be represented by Mr. Creizman and
18  Ms. Polisi.  Before counsel appeared for him, Mr. Kapur had
19  been essentially unresponsive to the contempt sanctions.  Since
20  counsel for Mr. Kapur appeared, the defense, meaning both
21  Mr. Kapur and counsel on his behalf, have taken productive
22  steps to try to purge the contempt.
23        Those efforts have been particularly evident over the
24  last six to nine months.  I attribute this productive activity
25  to the appearance of counsel and also, no doubt, to the

1    negative experience for Mr. Kapur of being detained for more

2    than a year in the Metropolitan Detention Center.

3             Since the contempt sanction was put into place, the

4    SEC, in particular, has been assiduous in using its unique

5    resources to continue to investigate the history and current

6    status of assets associated with, or formerly held by, or in

7    the name of, Mr. Kapur.  As a result of these efforts, the

8    Court has received additional evidence about various assets.

9    This evidence has taken the form of account records, as well as

10   electronic and other communications by Mr. Kapur and others.

11            Over the course of the many conferences with counsel,

12   the basis for the continued contempt sanction has gradually

13   narrowed to a single asset.  That asset, and this is

14   significant for today's proceeding, is the bank account at Bank

15   Vontobel, a Swiss bank, held in the name of the "Family and

16   Children Charitable Foundation."

17            The Court, in fact, recently supplemented its findings

18   as to the Bank Vontobel account based on information that the

19   SEC uncovered.  As reflected in the Court's findings, Mr. Kapur

20   while the sole managing principal of ThinkStrategy Capital

21   Management LLC, transferred $2,144,147.20 from ThinkStrategy to

22   a foreign entity under his control.  Through a series of later

23   transfers involving other foreign entities, that money wound up

24   in the Bank Vontobel account in Switzerland, where it sits

25   today.

    Chetan Kapur used to be the beneficiary of that bank account, which is formally owned by the Mossack Fonseca Law Firm.  However, in 2014, Mr. Kapur -- and this was before the contempt proceedings began -- made his brother, Kabir Kapur, the beneficiary.

    I should add that the Bank Vontobel account is today frozen by Swiss authorities for independent reasons, unrelated to the SEC and Schwarz actions.  As a result, there is no action that the Court can take in these proceedings that can get money released from that account now.

    The issue relating to that account here is whether Chetan Kapur has taken all of the steps he can to reverse the designation of Kabir Kapur as the account's beneficiary and to relinquish any claims he, Chetan Kapur, has to that account in favor of the judgment creditors.  That way, in the event the account is ever unfrozen and still has a positive balance, the assets in that account would then promptly be available to Chetan Kapur's judgment creditors.

    That brings me to the present motion.  Mr. Creizman has now moved on Mr. Kapur's behalf for the Court to lift the contempt sanction and to discharge him from detention. Mr. Creizman argues that over the past months, Chetan Kapur, both directly and through counsel, has done everything he can realistically do and has taken all the steps he can realistically take in this regard.

      Specifically, Mr. Creizman notes, Chetan Kapur has done the following.  He has renounced any claim he has in the Vontobel account in favor of the SEC.  Thus, if beneficiary status in the Vontobel account were to be transferred back to Chetan Kapur, the SEC would become the beneficiary of the Vontobel account, so as to facilitate the payment of the civil judgment.

      To obtain a transfer of the beneficiary status, Mr. Creizman notes, Chetan Kapur has also written his brother, Kabir Kapur, and asked Kabir Kapur to reverse the beneficiary status.  Chetan Kapur has also written his mother, who is also Kabir Kapur's mother, to seek her intervention with Kabir Kapur.  Mr. Creizman separately has also entreated Kabir Kapur, the Kapur brothers' mother and, for that matter, Mossack Fonseca, to reverse the beneficiary designation.

      Mr. Creizman has explained that Chetan Kapur is languishing in federal prison, and has been since July 2015, on account of the Bank Vontobel account and that he may languish therein definitely if there is not productive movement.

      I would note that the Court has reviewed documentary proof of these various communications.  Most of these communications have been made available to the plaintiff judgment creditors in these actions.  Some, or really aspects of some, have been provided to the Court ex parte or in redacted form, for legitimate reasons, including on account of

privilege.

However, Mr. Creizman notes, notwithstanding these efforts, Kabir Kapur has refused to budge. Kabir Kapur has refused to correspond with counsel. He has refused to respond to counsel's inquiries. Kabir Kapur has refused to heed Chetan Kapur's entreaties and his mother's entreaties to change the beneficiary on the Vontobel account.

Kabir Kapur has also refused to discuss a possible compromise that the mother, Manju Kapur, has proposed, and to which the judgment creditors were potentially receptive, in which Kabir Kapur could keep some of the funds, while the majority would be released to Chetan Kapur's creditors.

As a result, Mr. Creizman argues, the contempt sanction can no longer be claimed to be effective. As Mr. Creizman puts the point, if holding Chetan Kapur in federal prison for 22 months is not enough to catalyze his brother into transferring back the beneficiary status, it is speculative to claim that his continued incarceration for another month or two or three or six months or a year would spur Kabir Kapur to act.

Mr. Creizman argues that, as frustrating as Kabir's Kapur's intransigence has been, Chetan Kapur has now done all he realistically can do. Mr. Creizman argues that Mr. Kapur's continued incarceration would only be punitive.

The SEC, supported by the Schwarz plaintiffs, supports the continued incarceration of Mr. Kapur. The SEC notes that

1    it was Mr. Kapur who created the present predicament by
2    transferring, some years ago, the beneficiary ownership to
3    Kabir Kapur.  That transfer, the SEC argues, was strategic, to
4    avoid the judgments against Chetan Kapur.  And the SEC notes
5    there is evidence of historical collaboration between the
6    brothers Kapur, in which Kabir Kapur helped fund Chetan Kapur's
7    expenses, albeit not through the Vontobel account.
8              The SEC theorizes that the Kapur brothers are playing
9    a long game.  Once Chetan Kapur is released from prison, the
10   SEC argues, Kabir will be there to support him financially,
11   including, if Kabir Kapur ever lays hands on it, from the
12   Vontobel account.  The SEC asks the Court to continue
13   imprisoning Chetan Kapur.
14             With that preface, I'll now address the motion.  I
15   want to begin by clarifying, including for the nonlawyers who
16   are here, including any of Mr. Kapur's victims who are here --
17   I don't think I see any, but they've been here in the past --
18   what the narrow issue here is under the law governing civil
19   contempt.  It is whether continued imprisonment of Mr. Kapur,
20   after 22 months, has a realistic possibility of coercing him to
21   act so as to comply with the Court's judgments.
22             So the issue is not whether Mr. Kapur's conduct
23   warrants punishment.  Under the law, punishment is not a proper
24   purpose of a contempt sanction.  The purpose of the contempt
25   sanction, instead, is to induce action in the form of

1  achievable compliance with the Court order.

2  As the Second Circuit has explained: "A civil
3  contempt order is designed to be coercive rather than
4  punitive." *Citing Huber v. Marine Midland Bank*, 51 F.3d 5, at
5  10 (2d Cir. 1995). So the issue is not whether Mr. Kapur
6  deserves punishment. It is not whether a castigating moral
7  judgment can be reached about Mr. Kapur, based on his track
8  record of lawless conduct and his callous and selfish conduct
9  towards his investor victims.

10  The Court can well understand why Mr. Kapur's victims
11  and their counsel are so enraged by his behavior. Indeed,
12  Mr. Kapur's own lawyers write the following: "Chetan Kapur has
13  done things in these proceedings that are disgraceful.
14  Plaintiffs have a right to feel cheated and deceived. We
15  cannot seriously dispute that Kapur's lack of credibility with
16  the Court and with plaintiffs has not been well earned, given
17  his track record." Docket 166 at Page 4. Again, that's
18  Mr. Kapur's lawyers speaking.

19  But this is not a criminal case. It's not a
20  sentencing proceeding. This is not judgment day. It's about
21  the steps that realistically can bring about payment of a
22  judgment, and while the proceeding is called a contempt
23  proceeding, the issue here is not whether Mr. Kapur's behavior
24  is, in some vernacular sense, contemptible.

25  Finally, the issue is not whether Kapur has committed

1  crimes.  Mr. Kapur was earlier prosecuted by the United States
2  Attorney in this district for investment fraud.  That case
3  resulted in a guilty plea and a term of some 12 months in
4  federal prison.  And if counsel for the SEC or the Schwarz
5  plaintiffs believe the evidence adduced in these proceedings
6  reveals criminal conduct not extinguished by Mr. Kapur's guilty
7  plea, they are at liberty to bring it to the attention of
8  federal or local prosecutors, if they have not already done so.
9         The issue here, instead, is whether continued
10 incarceration will have a realistic coercive effect on
11 Mr. Kapur so as to prod him to act so as to bring about payment
12 of the judgments against him.  The burden is on the contemnor,
13 Mr. Kapur, to show his inability to comply.  Citing *Huber*, 51
14 F.3d at 10.
15        But in applying the standard, the Second Circuit has
16 instructed that, "at some point, confinement for civil contempt
17 loses its coercive effect and becomes punitive." *Commodities*
18 *Futures Trading Commission v. Armstrong*, 269 F.3d 109, at 112
19 (2d Cir. 2001)
20        As the Second Circuit has put the point:  "When it
21 becomes obvious that sanctions are not going to compel
22 compliance, they lose their remedial characteristics and take
23 on more of the nature of punishment." *Citing Simkin v. United*
24 *States*, 715 F.2d 34, at 36 to 37 (2d Cir. 1983)  Quoting the
25 case of *Soobzokov v. CBS, Inc.*, 642 F.2d 28, at 31, (2d Cir.

1981).

For that reason, in cases in which witnesses have refused to testify in response to a grand jury subpoena and have, therefore, been found in civil contempt and imprisoned, courts have declined to permit an indefinite period of detention. Instead, unless there is a substantial likelihood found that "continued confinement will accomplish its coercive purpose," the witness is to be released from custody. Citing *Simkin*, 715 F.2d at 37. In cases involving refusals to testify, in fact, Congress has determined that 18 months is the absolute outer bound of confinement, pursuant to civil contempt. See 28 U.S.C. section 1826(a).

Now, the same statutory outer limit does not apply to cases of civil contempt involving failure to pay a judgment. The cases are few and far between in which such confinement has exceeded 18 months.

Applying these standards here, it's important to recognize that there is no claim that Mr. Kapur, Chetan Kapur, himself, personally, has custody or control of money which he is refusing to pay. He does not. The sanction here is not about getting Mr. Kapur to sign a check and approve a wire transfer from the Vontobel account. As to that account, the point of incarceration has not been to get Mr. Chetan Kapur to direct that money be paid from that account towards his judgment. Mr. Kapur cannot do so. Although, he has done the

1  act of renouncing a claim to that account, should he become the
2  beneficiary.
3          The purpose of the contempt sanction has been to get
4  the beneficiary status of that account transferred back from
5  Kabir Kapur to Chetan Kapur, and thereafter to the SEC.  And
6  the man who controls the beneficiary status of the Vontobel
7  account is Chetan Kapur's brother, Kabir Kapur.
8          On the record that has developed during the past 22
9  months, the Court is hard-pressed to identify anything further
10 Chetan Kapur can do, and petitioners, too, have come up empty
11 in identifying further practical steps that Chetan Kapur can
12 take.  To be sure, for a long time Mr. Kapur did nothing.  He
13 stood pat.  But starting roughly eight months ago, he began to
14 take this situation more seriously.
15         There is now a documentary record of some eight months
16 of sustained efforts by Mr. Kapur and Mr. Creizman to prompt
17 action.  They have made Mr. Kapur's incarceration known to
18 Kabir Kapur, to the Kapurs' mother, and to Mossack Fonseca.
19 They have demanded repeatedly that Kabir Kapur change the
20 beneficiary designation.  They have floated a settlement
21 proposal, a compromise to Kabir Kapur, brokered by none other
22 than the mother of the Kapur brothers.
23         This timeline reflects that the contempt sanction here
24 had some utility.  It took more than a year, but eventually,
25 being in prison indefinitely spurred, in recent months,

meaningful action by Chetan Kapur to try to get the beneficiary designation reversed. Mr. Kapur, had you taken these actions earlier, had you approached this process seriously, rather than sitting idly by for more than a year and denying any responsibility to your victims, we might well have come to this day much earlier.

The point is, though, that over the last eight months or so, guided ably by Mr. Creizman, Mr. Kapur has finally acted. Mr. Creizman deserves much credit. He listened to the Court's suggestions, and I might add to plaintiff's counsel's suggestions, as to ways of trying to get the beneficiary designation reversed. He has pursued each. None, however, have borne fruit.

The SEC responds in its most recent submissions with several arguments. First, it notes that Chetan Kapur's inability to comply with the Court's judgments is ultimately self-created. It was Chetan Kapur who changed the beneficiary designation to his brother prior to the contempt proceeding, presumably to make the Vontobel account harder to reach by creditors. Had Chetan Kapur not done that, the SEC fairly argues, the present predicament would not exist. The beneficiary designation could be changed here and now to the judgment creditors.

Factually, the SEC's argument is inescapably accurate. The Court credits that that was exactly why Chetan Kapur

changed the designation, to block his creditors.  The problem, though, with the SEC's argument is that it explains too much.  It would justify indefinite incarceration of Chetan Kapur.  By the SEC's logic, Chetan Kapur could be held in custody forever, for a year or five years or ten years or more.

At this point, Kabir Kapur has known for 22 months that his brother is in federal prison in New York.  That is nearly twice the length of time Chetan Kapur served in federal prison as a result of his sentence on the criminal case.  Yet, Kabir Kapur has not been moved to act.

The SEC has not identified a case with a materially longer period of coercive custody than this.  The SEC has not identified any logical endpoint to its argument.  The judgment creditors have not given the Court any good reason why the next two months or 12 months or 22 months or 32 months in prison are likely to be any different or to spur Kabir Kapur to act, if he has not acted already.

Second, the SEC notes there is evidence of deceptive financial behavior involving Chetan Kapur.  In 2014, before the Vontobel account was frozen, Kabir Kapur withdrew some proceeds from it for Chetan Kapur's benefit.

The SEC also presents new evidence that in 2015, after he was imprisoned Chetan Kapur engaged in deception with respect to the $92,000 engagement ring returned by a person, who I'm sure is glad to refer to herself as his ex-fiancé.

1    Through a roundabout route, the fruits of the sale of that ring
2    were used to pay Chetan Kapur's rent.  But the SEC's argument
3    focuses on the wrong issue.
4         The decision for the Court about whether to maintain
5    the contempt sanction is not a report card on Chetan Kapur's
6    integrity or his good faith.  The Court is prepped to accept
7    the characterization by the SEC of Mr. Kapur as deceitful and
8    manipulative.  The Court, in fact, made findings to the same
9    effect in its July 1, 2015, decision finding Mr. Kapur in
10   contempt.  The Court there found Mr. Kapur, among other things,
11   to be a persistent liar, and Mr. Kapur's own lawyers today call
12   him "disgraceful."
13        The issue before the Court today, though, is a
14   functional one.  It is whether there is now, after 22 months in
15   prison, a realistic prospect that continued incarceration of
16   Mr. Kapur will bring results, meaning whether it will cause his
17   brother in India finally to change the designation on the
18   Vontobel account.  On that issue, the evidence, old and new, of
19   Chetan Kapur's historical malfeasance simply does not show that
20   Mr. Kapur maintains suasion over his brother such that the
21   additional incarceration of Mr. Kapur and additional entreaties
22   by him to his brother will cause Kabir Kapur to act.
23        After giving the matter a great deal of thought, the
24   Court's judgment is that, barring a change in the factual
25   record, it is no longer realistic to expect that Mr. Kapur's

1    incarceration will prompt Kabir Kapur to reverse the
2    beneficiary designation on the Vontobel account.  His brother
3    has been in federal prison for 22 months.  Any finding that
4    keeping Chetan Kapur in custody a little longer would do the
5    trick would be based on speculation and hope.  It would not be
6    based on facts and evidence and the reasonable inferences
7    therefrom.
8         The Court is constrained to conclude that any further
9    incarceration of Chetan Kapur, on the present record, would be
10   punitive.  It would not be productively or realistically
11   coercive.
12        The Court will, therefore, issue an order later today
13   lifting the finding of contempt and discharging Mr. Kapur from
14   custody.
15        In so ruling, the Court does not rule out that changed
16   circumstances could justify a reinstatement of the contempt
17   sanction.  The Court's finding is based on the present record.
18   Mr. Kapur, you remain obligated to pay the two judgments
19   against you.  I expect you to do so.  I expect you to take your
20   legal duties seriously.  If you are found to have access to
21   funds which you are not using for that purpose, I expect the
22   Court will receive an application from plaintiffs.  Depending
23   on the facts, you could end up being subject to civil contempt
24   again or even to criminal prosecution.
25        Your track record of selfishness, irresponsibility and

1	deceit has been, in the words of your counsel, disgraceful.
2	The plaintiffs in these two actions and the judiciary and this
3	great nation, in which you are fortunate enough to live, expect
4	better of you.
5	          To the plaintiffs, I wish you well in collecting on
6	these judgments.  The Court stands ready to grant any
7	meritorious application that will assist you in collecting on
8	them.  It is my expectation, too, that plaintiff's counsel have
9	put these 22 months to good use.  It is my expectation that
10	counsel for the judgment creditors have worked assiduously to
11	do what they can to block the release of funds from the
12	Vontobel account to anyone other than the judgment creditors.
13	          As I have noted, the Vontobel account remains frozen.
14	Mr. Roessner, Mr. Solotaroff, I wish you well in your efforts
15	to assure that, if it ever becomes unfrozen, the plaintiffs
16	here, and not Kabir Kapur, will gain title to it.
17	          Therein ends the Court's ruling.  Does anyone have
18	anything further, beginning with the SEC?
19	          MR. ROESSNER:  No, your Honor.
20	          THE COURT:  Okay.  Mr. Solotaroff?
21	          MR. SOLOTAROFF:  No, Judge.
22	          THE COURT:  Mr. Creizman?
23	          MR. CREIZMAN:  No, your Honor.
24	          THE COURT:  All right.  Look, I want to thank counsel,
25	all of you, for your very able advocacy over these 22 months,

1    and I want to reiterate what I said at the end to plaintiffs'
2    counsel.  At this stage, there is no longer a basis for
3    continued coercive contempt for the reasons that I've stated.
4    But the judgment creditors have an ongoing judgment in their
5    favor and an interest in vindicating that judgment.
6              I invite you to come back to me if there are
7    applications you have, for steps that I can take to make sure
8    that the judgment is vindicated.  If there are things that I
9    can productively do of any nature, not necessarily sounding in
10   civil contempt, but anything that I can do to help vindicate
11   the judgment, I stand ready.
12             Thank you.  We stand adjourned.
13             (Adjourned)