H59PSCHC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BENJAMIN SCHWARZ, ET AL.,

                    Plaintiffs,
                                            09 CV 9346 (PAE)
           v.                               11 CV 8094 (PAE)
                                            12 CV 5818 (PAE)
THINKSTRATEGY CAPITAL
MANAGEMENT LLC, ET AL,

                    Defendants.

------------------------------x
                                            New York, N.Y.
                                            May 9, 2017
                                            1:08 p.m.

Before:

                 HON. PAUL A. ENGELMAYER,

                                            District Judge

                         APPEARANCES

GISKAN, SOLOTAROFF & ANDERSON & STEWART, LLP
     Attorneys for Schwarz Plaintiffs
BY:  JASON SOLOTAROFF

U.S. SECURITIES AND EXCHANGE COMMISSION
     Attorneys for SEC Plaintiff
BY:  MICHAEL J. ROESSNER
     MARSHA C. MASSEY

HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP
     Attorneys for Schneider Plaintiffs
BY:  JONATHAN HARRIS

CREIZMAN PLLC
     Attorneys for the Defendants
BY:  ERIC M. CREIZMAN

H59PSCHC

1              (In open court)

2              (Case called)

3              MR. SOLOTAROFF:  For the Schwarz plaintiffs, Jason

4      Solotaroff.

5              THE COURT:  Good afternoon, Mr. Solotaroff.

6              MS. MASSEY:  Good afternoon, Judge.  Marsha Massey on

7      behalf of the Securities and Exchange Commission.

8              THE COURT:  Good afternoon.

9              MR. ROESSNER:  Mike Roessner for the SEC.

10             THE COURT:  Good afternoon.

11             MR. HARRIS:  Good afternoon, your Honor.  Jonathan

12     Harris, Harris, O'Brien & Chaudhry, for the Schneider

13     plaintiffs.

14             THE COURT:  All right.  Good afternoon.

15             MR. CREIZMAN:  Good afternoon, your Honor.  Eric

16     Creizman, and with me is Chetan Kapur.

17             THE COURT:  Good afternoon to you, and good afternoon

18     to you, Mr. Kapur.  You may all be seated.

19             I have received the submissions from the SEC, and I've

20     received the submissions from Mr. Kapur.  Just for the record,

21     has anyone else made any written submissions in this matter?

22             MR. SOLOTAROFF:  No, Judge.  The Schwarz plaintiffs

23     join in the SEC.

24             THE COURT:  I assumed as much.  Thank you.

25             MR. HARRIS:  Your Honor, the same for the Schneider

1    plaintiffs.

2           THE COURT:  Since the last submission I received, has

3    there been any factual developments?  Is there anything else to

4    bring to my attention?  That would be no.  Okay.  In that case,

5    I have a ruling to read from the bench.

6           I am now going to issue a ruling addressing

7    Mr. Creizman's motion made on Chetan Kapur's behalf to lift the

8    finding of contempt against Mr. Kapur and discharge him from

9    detention.  For your planning purposes, I do not intend to

10   issue a written decision.  There will simply be a bottom-line

11   order of the issues that incorporates by reference the Court's

12   opinion from the bench, this opinion.  Therefore, if the

13   content of what I say is significant to counsel, you will need

14   to obtain the transcript.

15          I am going to begin by recapping the key facts.  On

16   July 1st, 2015, the Court held defendant Chetan Kapur in civil

17   contempt for failure to pay money towards the multi-million

18   dollar judgments the Court had entered against him in two civil

19   cases.  One case was brought by the Securities and Exchange

20   Commission entitled *Securities and Exchange Commission v.*

21   *Chetan Kapur and Lilaboc LLC*, 11 CV 8094 (PAE).  There, the

22   consent judgment against Mr. Kapur is for $4,988,196.59, which

23   consists of disgorgement, civil penalties and pre-judgment

24   interest.

25          The other case was brought by plaintiff investors, who

are members of the Schwarz family, *Benjamin Schwarz, Christina*

*Schwarz and Daniel Schwarz v. Thinkstrategy Capital Management*

*LLC and Chetan Kapur*, 09 CV 9346 (PAE).  The judgment there was

obtained after a civil bench trial.  It is for $4,836,473,

which includes pre-judgment interest.

          In its July 1, 2015, decision, which is docketed in

the SEC case, 11 CV 8094 at docket 68, the Court reviewed at

length the evidence of Mr. Kapur's access to funds.  That

evidence had been developed after a several-day contempt

hearing and included voluminous evidence adduced by the SEC.

          The Court held that Kapur had not proven his inability

to pay money towards the two judgments.  On the contrary, the

Court held the SEC had identified several categories of assets

that appeared available to Mr. Kapur, and Mr. Kapur had been

given ample opportunities to pay the judgments but had

continued to skirt them, while using money made available to

him for his personal benefit.

          As a meanings of coercing Mr. Kapur to pay towards the

judgments, the Court ordered Mr. Kapur incarcerated until he

either purged the contempt, by repatriating assets towards the

judgments, or established that compliance was not possible.

The sanction took effect, and Mr. Kapur surrendered to the

United States marshals on July 7th, 2015.

          As of Sunday, May 7, 2017, Mr. Kapur has been

incarcerated for 22 months, pursuant to the Court's civil

contempt order.  Over that period, the Court has held numerous

conferences with counsel and Mr. Kapur.  At each conference,

the Court has reviewed with counsel the facts relating to the

assets ostensibly available to Mr. Kapur.  Further facts have

been adduced as to various categories of assets, and at each

conference, the Court has assessed whether the contempt

sanction of incarceration continued to be justified.  Each

time, the Court found that it was.

Over the course of these conferences, the Court has

received helpful guidance from counsel for the judgment

creditors.  For the SEC, that is Mr. Roessner, and for the

Schwarz plaintiffs, that was Mr. Solataroff.  The Court has

also benefited from the appearance and the able work of counsel

for Mr. Kapur.

Mr. Kapur had originally been pro se, including at the

time of the evidentiary hearing that led to the contempt

sanction.  Mr. Kapur came to be represented by Mr. Creizman and

Ms. Polisi.  Before counsel appeared for him, Mr. Kapur had

been essentially unresponsive to the contempt sanctions.  Since

counsel for Mr. Kapur appeared, the defense, meaning both

Mr. Kapur and counsel on his behalf, have taken productive

steps to try to purge the contempt.

Those efforts have been particularly evident over the

last six to nine months.  I attribute this productive activity

to the appearance of counsel and also, no doubt, to the

H59PSCHC

1    negative experience for Mr. Kapur of being detained for more

2    than a year in the Metropolitan Detention Center.

3          Since the contempt sanction was put into place, the

4    SEC, in particular, has been assiduous in using its unique

5    resources to continue to investigate the history and current

6    status of assets associated with, or formerly held by, or in

7    the name of, Mr. Kapur.  As a result of these efforts, the

8    Court has received additional evidence about various assets.

9    This evidence has taken the form of account records, as well as

10   electronic and other communications by Mr. Kapur and others.

11         Over the course of the many conferences with counsel,

12   the basis for the continued contempt sanction has gradually

13   narrowed to a single asset.  That asset, and this is

14   significant for today's proceeding, is the bank account at Bank

15   Vontobel, a Swiss bank, held in the name of the "Family and

16   Children Charitable Foundation."

17         The Court, in fact, recently supplemented its findings

18   as to the Bank Vontobel account based on information that the

19   SEC uncovered.  As reflected in the Court's findings, Mr. Kapur

20   while the sole managing principal of ThinkStrategy Capital

21   Management LLC, transferred $2,144,147.20 from ThinkStrategy to

22   a foreign entity under his control.  Through a series of later

23   transfers involving other foreign entities, that money wound up

24   in the Bank Vontobel account in Switzerland, where it sits

25   today.

H59PSCHC

1          Chetan Kapur used to be the beneficiary of that bank

2    account, which is formally owned by the Mossack Fonseca Law

3    Firm.  However, in 2014, Mr. Kapur -- and this was before the

4    contempt proceedings began -- made his brother, Kabir Kapur,

5    the beneficiary.

6          I should add that the Bank Vontobel account is today

7    frozen by Swiss authorities for independent reasons, unrelated

8    to the SEC and Schwarz actions.  As a result, there is no

9    action that the Court can take in these proceedings that can

10   get money released from that account now.

11         The issue relating to that account here is whether

12   Chetan Kapur has taken all of the steps he can to reverse the

13   designation of Kabir Kapur as the account's beneficiary and to

14   relinquish any claims he, Chetan Kapur, has to that account in

15   favor of the judgment creditors.  That way, in the event the

16   account is ever unfrozen and still has a positive balance, the

17   assets in that account would then promptly be available to

18   Chetan Kapur's judgment creditors.

19         That brings me to the present motion.  Mr. Creizman

20   has now moved on Mr. Kapur's behalf for the Court to lift the

21   contempt sanction and to discharge him from detention.

22   Mr. Creizman argues that over the past months, Chetan Kapur,

23   both directly and through counsel, has done everything he can

24   realistically do and has taken all the steps he can

25   realistically take in this regard.

H59PSCHC

1            Specifically, Mr. Creizman notes, Chetan Kapur has

2      done the following.  He has renounced any claim he has in the

3      Vontobel account in favor of the SEC.  Thus, if beneficiary

4      status in the Vontobel account were to be transferred back to

5      Chetan Kapur, the SEC would become the beneficiary of the

6      Vontobel account, so as to facilitate the payment of the civil

7      judgment.

8            To obtain a transfer of the beneficiary status,

9      Mr. Creizman notes, Chetan Kapur has also written his brother,

10     Kabir Kapur, and asked Kabir Kapur to reverse the beneficiary

11     status.  Chetan Kapur has also written his mother, who is also

12     Kabir Kapur's mother, to seek her intervention with Kabir

13     Kapur.  Mr. Creizman separately has also entreated Kabir Kapur,

14     the Kapur brothers' mother and, for that matter, Mossack

15     Fonseca, to reverse the beneficiary designation.

16           Mr. Creizman has explained that Chetan Kapur is

17     languishing in federal prison, and has been since July 2015, on

18     account of the Bank Vontobel account and that he may languish

19     therein definitely if there is not productive movement.

20           I would note that the Court has reviewed documentary

21     proof of these various communications.  Most of these

22     communications have been made available to the plaintiff

23     judgment creditors in these actions.  Some, or really aspects

24     of some, have been provided to the Court ex parte or in

25     redacted form, for legitimate reasons, including on account of

1    privilege.

2              However, Mr. Creizman notes, notwithstanding these

3    efforts, Kabir Kapur has refused to budge.  Kabir Kapur has

4    refused to correspond with counsel.  He has refused to respond

5    to counsel's inquiries.  Kabir Kapur has refused to heed Chetan

6    Kapur's entreaties and his mother's entreaties to change the

7    beneficiary on the Vontobel account.

8              Kabir Kapur has also refused to discuss a possible

9    compromise that the mother, Manju Kapur, has proposed, and to

10   which the judgment creditors were potentially receptive, in

11   which Kabir Kapur could keep some of the funds, while the

12   majority would be released to Chetan Kapur's creditors.

13             As a result, Mr. Creizman argues, the contempt

14   sanction can no longer be claimed to be effective.  As

15   Mr. Creizman puts the point, if holding Chetan Kapur in federal

16   prison for 22 months is not enough to catalyze his brother into

17   transferring back the beneficiary status, it is speculative to

18   claim that his continued incarceration for another month or two

19   or three or six months or a year would spur Kabir Kapur to act.

20             Mr. Creizman argues that, as frustrating as Kabir's

21   Kapur's intransigence has been, Chetan Kapur has now done all

22   he realistically can do.  Mr. Creizman argues that Mr. Kapur's

23   continued incarceration would only be punitive.

24             The SEC, supported by the Schwarz plaintiffs, supports

25   the continued incarceration of Mr. Kapur.  The SEC notes that

H59PSCHC

1    it was Mr. Kapur who created the present predicament by

2    transferring, some years ago, the beneficiary ownership to

3    Kabir Kapur.  That transfer, the SEC argues, was strategic, to

4    avoid the judgments against Chetan Kapur.  And the SEC notes

5    there is evidence of historical collaboration between the

6    brothers Kapur, in which Kabir Kapur helped fund Chetan Kapur's

7    expenses, albeit not through the Vontobel account.

8              The SEC theorizes that the Kapur brothers are playing

9    a long game.  Once Chetan Kapur is released from prison, the

10   SEC argues, Kabir will be there to support him financially,

11   including, if Kabir Kapur ever lays hands on it, from the

12   Vontobel account.  The SEC asks the Court to continue

13   imprisoning Chetan Kapur.

14             With that preface, I'll now address the motion.  I

15   want to begin by clarifying, including for the nonlawyers who

16   are here, including any of Mr. Kapur's victims who are here --

17   I don't think I see any, but they've been here in the past --

18   what the narrow issue here is under the law governing civil

19   contempt.  It is whether continued imprisonment of Mr. Kapur,

20   after 22 months, has a realistic possibility of coercing him to

21   act so as to comply with the Court's judgments.

22             So the issue is not whether Mr. Kapur's conduct

23   warrants punishment.  Under the law, punishment is not a proper

24   purpose of a contempt sanction.  The purpose of the contempt

25   sanction, instead, is to induce action in the form of

1    achievable compliance with the Court order.

2          As the Second Circuit has explained:  "A civil

3    contempt order is designed to be coercive rather than

4    punitive."  *Citing Huber v. Marine Midland Bank*, 51 F.3d 5, at

5    10 (2d Cir. 1995).  So the issue is not whether Mr. Kapur

6    deserves punishment.  It is not whether a castigating moral

7    judgment can be reached about Mr. Kapur, based on his track

8    record of lawless conduct and his callous and selfish conduct

9    towards his investor victims.

10          The Court can well understand why Mr. Kapur's victims

11   and their counsel are so enraged by his behavior.  Indeed,

12   Mr. Kapur's own lawyers write the following:  "Chetan Kapur has

13   done things in these proceedings that are disgraceful.

14   Plaintiffs have a right to feel cheated and deceived.  We

15   cannot seriously dispute that Kapur's lack of credibility with

16   the Court and with plaintiffs has not been well earned, given

17   his track record."  Docket 166 at Page 4.  Again, that's

18   Mr. Kapur's lawyers speaking.

19          But this is not a criminal case.  It's not a

20   sentencing proceeding.  This is not judgment day.  It's about

21   the steps that realistically can bring about payment of a

22   judgment, and while the proceeding is called a contempt

23   proceeding, the issue here is not whether Mr. Kapur's behavior

24   is, in some vernacular sense, contemptible.

25          Finally, the issue is not whether Kapur has committed

H59PSCHC

1    crimes.  Mr. Kapur was earlier prosecuted by the United States

2    Attorney in this district for investment fraud.  That case

3    resulted in a guilty plea and a term of some 12 months in

4    federal prison.  And if counsel for the SEC or the Schwarz

5    plaintiffs believe the evidence adduced in these proceedings

6    reveals criminal conduct not extinguished by Mr. Kapur's guilty

7    plea, they are at liberty to bring it to the attention of

8    federal or local prosecutors, if they have not already done so.

9           The issue here, instead, is whether continued

10   incarceration will have a realistic coercive effect on

11   Mr. Kapur so as to prod him to act so as to bring about payment

12   of the judgments against him.  The burden is on the contemnor,

13   Mr. Kapur, to show his inability to comply.  Citing *Huber*, 51

14   F.3d at 10.

15          But in applying the standard, the Second Circuit has

16   instructed that, "at some point, confinement for civil contempt

17   loses its coercive effect and becomes punitive." *Commodities*

18   *Futures Trading Commission v. Armstrong*, 269 F.3d 109, at 112

19   (2d Cir. 2001)

20          As the Second Circuit has put the point:  "When it

21   becomes obvious that sanctions are not going to compel

22   compliance, they lose their remedial characteristics and take

23   on more of the nature of punishment." *Citing Simkin v. United*

24   *States*, 715 F.2d 34, at 36 to 37 (2d Cir. 1983)  Quoting the

25   case of *Soobzokov v. CBS, Inc.*, 642 F.2d 28, at 31, (2d Cir.

1    1981).

2              For that reason, in cases in which witnesses have

3    refused to testify in response to a grand jury subpoena and

4    have, therefore, been found in civil contempt and imprisoned,

5    courts have declined to permit an indefinite period of

6    detention.  Instead, unless there is a substantial likelihood

7    found that "continued confinement will accomplish its coercive

8    purpose," the witness is to be released from custody.  Citing

9    *Simkin*, 715 F.2d at 37.  In cases involving refusals to

10   testify, in fact, Congress has determined that 18 months is the

11   absolute outer bound of confinement, pursuant to civil

12   contempt.  See 28 U.S.C. section 1826(a).

13             Now, the same statutory outer limit does not apply to

14   cases of civil contempt involving failure to pay a judgment.

15   The cases are few and far between in which such confinement has

16   exceeded 18 months.

17             Applying these standards here, it's important to

18   recognize that there is no claim that Mr. Kapur, Chetan Kapur,

19   himself, personally, has custody or control of money which he

20   is refusing to pay.  He does not.  The sanction here is not

21   about getting Mr. Kapur to sign a check and approve a wire

22   transfer from the Vontobel account.  As to that account, the

23   point of incarceration has not been to get Mr. Chetan Kapur to

24   direct that money be paid from that account towards his

25   judgment.  Mr. Kapur cannot do so.  Although, he has done the

H59PSCHC

1     act of renouncing a claim to that account, should he become the

2     beneficiary.

3            The purpose of the contempt sanction has been to get

4     the beneficiary status of that account transferred back from

5     Kabir Kapur to Chetan Kapur, and thereafter to the SEC.  And

6     the man who controls the beneficiary status of the Vontobel

7     account is Chetan Kapur's brother, Kabir Kapur.

8            On the record that has developed during the past 22

9     months, the Court is hard-pressed to identify anything further

10    Chetan Kapur can do, and petitioners, too, have come up empty

11    in identifying further practical steps that Chetan Kapur can

12    take.  To be sure, for a long time Mr. Kapur did nothing.  He

13    stood pat.  But starting roughly eight months ago, he began to

14    take this situation more seriously.

15           There is now a documentary record of some eight months

16    of sustained efforts by Mr. Kapur and Mr. Creizman to prompt

17    action.  They have made Mr. Kapur's incarceration known to

18    Kabir Kapur, to the Kapurs' mother, and to Mossack Fonseca.

19    They have demanded repeatedly that Kabir Kapur change the

20    beneficiary designation.  They have floated a settlement

21    proposal, a compromise to Kabir Kapur, brokered by none other

22    than the mother of the Kapur brothers.

23           This timeline reflects that the contempt sanction here

24    had some utility.  It took more than a year, but eventually,

25    being in prison indefinitely spurred, in recent months,

1   meaningful action by Chetan Kapur to try to get the beneficiary

2   designation reversed.  Mr. Kapur, had you taken these actions

3   earlier, had you approached this process seriously, rather than

4   sitting idly by for more than a year and denying any

5   responsibility to your victims, we might well have come to this

6   day much earlier.

7           The point is, though, that over the last eight months

8   or so, guided ably by Mr. Creizman, Mr. Kapur has finally

9   acted.  Mr. Creizman deserves much credit.  He listened to the

10  Court's suggestions, and I might add to plaintiff's counsel's

11  suggestions, as to ways of trying to get the beneficiary

12  designation reversed.  He has pursued each.  None, however,

13  have borne fruit.

14          The SEC responds in its most recent submissions with

15  several arguments.  First, it notes that Chetan Kapur's

16  inability to comply with the Court's judgments is ultimately

17  self-created.  It was Chetan Kapur who changed the beneficiary

18  designation to his brother prior to the contempt proceeding,

19  presumably to make the Vontobel account harder to reach by

20  creditors.  Had Chetan Kapur not done that, the SEC fairly

21  argues, the present predicament would not exist.  The

22  beneficiary designation could be changed here and now to the

23  judgment creditors.

24          Factually, the SEC's argument is inescapably accurate.

25  The Court credits that that was exactly why Chetan Kapur

1    changed the designation, to block his creditors.  The problem,

2    though, with the SEC's argument is that it explains too much.

3    It would justify indefinite incarceration of Chetan Kapur.  By

4    the SEC's logic, Chetan Kapur could be held in custody forever,

5    for a year or five years or ten years or more.

6           At this point, Kabir Kapur has known for 22 months

7    that his brother is in federal prison in New York.  That is

8    nearly twice the length of time Chetan Kapur served in federal

9    prison as a result of his sentence on the criminal case.  Yet,

10   Kabir Kapur has not been moved to act.

11          The SEC has not identified a case with a materially

12   longer period of coercive custody than this.  The SEC has not

13   identified any logical endpoint to its argument.  The judgment

14   creditors have not given the Court any good reason why the next

15   two months or 12 months or 22 months or 32 months in prison are

16   likely to be any different or to spur Kabir Kapur to act, if he

17   has not acted already.

18          Second, the SEC notes there is evidence of deceptive

19   financial behavior involving Chetan Kapur.  In 2014, before the

20   Vontobel account was frozen, Kabir Kapur withdrew some proceeds

21   from it for Chetan Kapur's benefit.

22          The SEC also presents new evidence that in 2015, after

23   he was imprisoned Chetan Kapur engaged in deception with

24   respect to the $92,000 engagement ring returned by a person,

25   who I'm sure is glad to refer to herself as his ex-fiancé.

H59PSCHC

1    Through a roundabout route, the fruits of the sale of that ring

2    were used to pay Chetan Kapur's rent.  But the SEC's argument

3    focuses on the wrong issue.

4            The decision for the Court about whether to maintain

5    the contempt sanction is not a report card on Chetan Kapur's

6    integrity or his good faith.  The Court is prepped to accept

7    the characterization by the SEC of Mr. Kapur as deceitful and

8    manipulative.  The Court, in fact, made findings to the same

9    effect in its July 1, 2015, decision finding Mr. Kapur in

10   contempt.  The Court there found Mr. Kapur, among other things,

11   to be a persistent liar, and Mr. Kapur's own lawyers today call

12   him "disgraceful."

13           The issue before the Court today, though, is a

14   functional one.  It is whether there is now, after 22 months in

15   prison, a realistic prospect that continued incarceration of

16   Mr. Kapur will bring results, meaning whether it will cause his

17   brother in India finally to change the designation on the

18   Vontobel account.  On that issue, the evidence, old and new, of

19   Chetan Kapur's historical malfeasance simply does not show that

20   Mr. Kapur maintains suasion over his brother such that the

21   additional incarceration of Mr. Kapur and additional entreaties

22   by him to his brother will cause Kabir Kapur to act.

23           After giving the matter a great deal of thought, the

24   Court's judgment is that, barring a change in the factual

25   record, it is no longer realistic to expect that Mr. Kapur's

H59PSCHC

1   incarceration will prompt Kabir Kapur to reverse the

2   beneficiary designation on the Vontobel account.  His brother

3   has been in federal prison for 22 months.  Any finding that

4   keeping Chetan Kapur in custody a little longer would do the

5   trick would be based on speculation and hope.  It would not be

6   based on facts and evidence and the reasonable inferences

7   therefrom.

8           The Court is constrained to conclude that any further

9   incarceration of Chetan Kapur, on the present record, would be

10  punitive.  It would not be productively or realistically

11  coercive.

12          The Court will, therefore, issue an order later today

13  lifting the finding of contempt and discharging Mr. Kapur from

14  custody.

15          In so ruling, the Court does not rule out that changed

16  circumstances could justify a reinstatement of the contempt

17  sanction.  The Court's finding is based on the present record.

18  Mr. Kapur, you remain obligated to pay the two judgments

19  against you.  I expect you to do so.  I expect you to take your

20  legal duties seriously.  If you are found to have access to

21  funds which you are not using for that purpose, I expect the

22  Court will receive an application from plaintiffs.  Depending

23  on the facts, you could end up being subject to civil contempt

24  again or even to criminal prosecution.

25          Your track record of selfishness, irresponsibility and

19

1    deceit has been, in the words of your counsel, disgraceful.

2    The plaintiffs in these two actions and the judiciary and this

3    great nation, in which you are fortunate enough to live, expect

4    better of you.

5         To the plaintiffs, I wish you well in collecting on

6    these judgments.  The Court stands ready to grant any

7    meritorious application that will assist you in collecting on

8    them.  It is my expectation, too, that plaintiff's counsel have

9    put these 22 months to good use.  It is my expectation that

10   counsel for the judgment creditors have worked assiduously to

11   do what they can to block the release of funds from the

12   Vontobel account to anyone other than the judgment creditors.

13        As I have noted, the Vontobel account remains frozen.

14   Mr. Roessner, Mr. Solotaroff, I wish you well in your efforts

15   to assure that, if it ever becomes unfrozen, the plaintiffs

16   here, and not Kabir Kapur, will gain title to it.

17        Therein ends the Court's ruling.  Does anyone have

18   anything further, beginning with the SEC?

19             MR. ROESSNER:  No, your Honor.

20             THE COURT:  Okay.  Mr. Solotaroff?

21             MR. SOLOTAROFF:  No, Judge.

22             THE COURT:  Mr. Creizman?

23             MR. CREIZMAN:  No, your Honor.

24             THE COURT:  All right.  Look, I want to thank counsel,

25   all of you, for your very able advocacy over these 22 months,

H59PSCHC

1    and I want to reiterate what I said at the end to plaintiffs'

2    counsel.  At this stage, there is no longer a basis for

3    continued coercive contempt for the reasons that I've stated.

4    But the judgment creditors have an ongoing judgment in their

5    favor and an interest in vindicating that judgment.

6              I invite you to come back to me if there are

7    applications you have, for steps that I can take to make sure

8    that the judgment is vindicated.  If there are things that I

9    can productively do of any nature, not necessarily sounding in

10   civil contempt, but anything that I can do to help vindicate

11   the judgment, I stand ready.

12             Thank you.  We stand adjourned.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25